# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
October 4, 2016

v

No. 329989
Berrien Circuit Court
LC No. 2014-005002-FH

LESLIE ELIJAH MALONE, JR.,

      Defendant-Appellant.

Before: MURRAY, P.J., and HOEKSTRA and BECKERING, JJ.

MURRAY, P.J., (*dissenting*).

My colleagues have agreed to an opinion that is well-written, well-reasoned, and thorough. Nonetheless, I must respectfully disagree with the conclusion of that opinion, mostly because the standards of review that we must apply compel an affirmance of the trial court's order.

When reviewing findings of fact by a trial court we apply a deferential standard of review, primarily because trial court judges are in a much better position than are we to make findings of fact. *People v Tyner*, 497 Mich 1001; 861 NW2d 662 (2015); *People v Etheridge*, 196 Mich App 43, 57; 492 NW2d 490 (1992). So too, we must pay some deference to a police officer's experience in determining what is, or is not, evidence of suspicious behavior when detaining a suspect beyond the initial traffic stop. See, e.g., *United States v Cortez*, 449 US 411, 418; 101 S Ct 690; 66 L Ed 2d 621 (1981) (Recognizing that from data gathered on the scene, "a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person."). In all cases, but particularly in one like this that is a "close call," we must ensure that we scrupulously adhere to these standards. In doing so, I would affirm the trial court's findings, conclusions, and order.

As the majority makes clear, defendant does not dispute that the initial traffic stop for illegal window tint was reasonable. Instead, the issue is whether the detention beyond the time necessary to conduct that stop was unreasonable and, thus, unlawful. In *Rodriguez v United States*, ___ US ___, ___; 135 S Ct 1609; 191 L Ed 2d 492 (2015), the United States Supreme Court held "that a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures" and that "[a] seizure justified only by a police-observed traffic violation, therefore, become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a ticket for

-1-

the violation." *Id*. at ___; 135 S Ct at 1612 (quotation marks and citation omitted; second and third alterations in *Rodriguez*). The *Rodriguez* Court explained that, in addition to determining whether to issue a ticket, "an officer's mission includes ordinary inquiries incident to [the traffic] stop" such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id*. at ___; 135 S Ct at 1615 (quotation marks and citation omitted; alteration in *Rodriguez*). The *Rodriguez* Court further explained that police "may conduct certain unrelated checks during an otherwise lawful traffic stop," but "may not do so in a way that prolongs the stop, *absent the reasonable suspicion ordinarily demanded to justify detaining an individual*." *Id*. (emphasis added).

Similarly, in *People v Williams*, 472 Mich 308, 315; 696 NW2d 636 (2005), the Michigan Supreme Court explained that "[a] traffic stop is reasonable as long as the driver is detained only for the purpose of allowing an officer to ask reasonable questions concerning the violation of law and its context for a reasonable period" but that "[t]he determination whether a traffic stop is reasonable must necessarily take into account the evolving circumstances with which the officer is faced." Accordingly, "when a traffic stop reveals a new set of circumstances, an officer is justified in extending the detention long enough to resolve the suspicion raised." *Id*.

After viewing the testimony of Officer Moore and reviewing the video tape from Officer Moore's camera vest, the trial court found that the officer had a reasonable suspicion to detain defendant until the arrival of the K-9 unit. The factors supporting Officer Moore's decision were:

> In the present case, the trooper justified detaining Defendant for an additional 20 minutes until a drug dog arrived based on the following facts: (1) Defendant and the passenger were quiet and sat lowly—sat low in their seats when the trooper first approached, which the trooper construed as nervousness; (2) Defendant initially said he was returning from dropping someone off at the casino to work, but changed his story to say he was dropping the person off to gamble when the trooper returned to the vehicle; (3) The vehicle was owned by a 3rd party; probably more significant, (4) An officer safety caution was reported on LIEN [sic], informing the trooper that Defendant may have been involved in criminal activity in the past; (5) the trooper received some prior history intelligence on Defendant and the passenger indicating they may have been involved with trafficking narcotics or were under investigation from another agency; (6) The car was very clean inside and the fresh laundry smell; (7) The trooper still observed nervousness on the part of Defendant and the passenger after he told them that he was not going to issue them a ticket.

The trial court found it compelling that Officer Moore "used specific techniques" and interpreted defendant's and Outlaw's (the passenger) demeanor as nervousness and that "Defendant or the passenger may have a history related to trafficking narcotics," and it indicated that these factors weighed strongly in favor of reasonable suspicion.

The majority overturns the trial court's finding of reasonable suspicion on basically two grounds. First, it concludes that Officer Moore never articulated "what reasonable inferences he drew from the facts or what his experience and training allowed him to infer from his observation" of the traffic stop. Second, the Court concludes that each of the factors identified by Officer Moore and the trial court did not rise to the level of reasonable suspicion.

With respect to the first conclusion, Officer Moore did testify that his observations from his initial contact with defendant and Outlaw led him to suspect that "they might be hiding something," and that criminality "might be afoot." What defendant or Outlaw were hiding— guns, drugs, other illegal contraband—was what the further investigation necessitated. *Williams*, 472 Mich at 315. And certainly the "officer safety precaution" warning from the LEIN system provided further objective evidence to Officer Moore that warranted additional suspicion/investigation. After all, an officer does not have to have reasonable suspicion of *precise* criminal activity. Instead, he must have reasonable suspicion that some type of criminal activity may be occurring. See, e.g., *United States v Arvizu*, 534 US 266, 272; 122 S Ct 744; 151 L Ed 2d 740 (2002) (Noting that the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion that criminal activity may be afoot); *Brown v Texas*, 443 US 47, 52; 99 S Ct 2637; 61 L Ed 2d 357 (1979) (Noting that an officer must have reasonable suspicion, based on objective facts, that the individual is involved in criminal activity), and *United States v Pack*, 612 F3d 341, 356 (CA 5, 2010), amended 622 F3d 383 (CA 5, 2010) (After discussing *Arvizu* and *Brown*, the court concluded that "[r]equiring police to have particularized facts that support a finding that 'criminal activity may be afoot' is different from requiring the police to articulate particularized facts that support a finding that a particular specific crime is afoot."). And, let us not forget that the persuasion level of the evidence for an officer's reasonable suspicion falls *below* that of our lowest civil burden, preponderance of the evidence. *Illinois v Wardlow*, 528 US 119, 123; 120 S Ct 673; 145 L Ed 2d 570 (2000); *United States v Sokolow*, 490 US 1, 7; 109 S Ct 1581; 104 L Ed 2d 1 (1989) (The degree of proof needed for reasonable "suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less demanding than that for probable cause."). Thus, Officer Moore provided a sufficient explanation, in context, that he had reasonable suspicion that criminal activity may be afoot.[1]

The Court's second conclusion fails for a couple of reasons. First, its analysis places too much emphasis on the sufficiency of each independent reason offered by Officer Moore and the trial court, as opposed to the collective value of those reasons. As the *Arvizu* Court emphasized, 534 US at 274, reviewing courts must be careful not to engage in a "divide-and-conquer" approach in reviewing the relied upon factors:

---

[1] We also must be careful not to place too much reliance on our independent review of the video, as the trial court made its findings on that *and* the testimony presented in open court. See *United States v Santos*, 403 F3d 1120, 1128 (CA 10, 2005) ("The increasing availability of videotapes of traffic stops due to cameras mounted on patrol cars does not deprive [circuit] courts of their expertise as finders of fact, or alter our precedent to the effect that appellate courts owe deference to the factual findings of [circuit] courts.").

We think that the approach taken by the Court of Appeals here departs sharply from the teachings of these cases. *The court's evaluation and rejection of seven of the listed factors in isolation from each other does not take into account the 'totality of the circumstances,' as our cases have understood that phrase.* The court appeared to believe that each observation by Stoddard that was by itself readily susceptible to an innocent explanation was entitled to 'no weight.' . . . *Terry, however, precludes this sort of divide-and-conquer analysis.* The officer in *Terry* observed the petitioner and his companions repeatedly walk back and forth, look into a store window, and confer with one another. Although each of the series of acts was 'perhaps innocent in itself,' we held that, taken together, they 'warranted further investigation.' 392 US at 22; 88 S Ct 1868. See also *Sokolow*, at 9; 109 S Ct 1581 (holding that factors which by themselves were 'quite consistent with innocent travel' collectively amounted to reasonable suspicion) [emphasis added.]

See also *Pack*, 612 F3d at 358; *United States v Zambrana*, 428 F3d 670, 675 (CA 7, 2005) ("Under this standard, a court cannot simply evaluate and reject each factor in isolation from the other factors."), and *United States v Nelson*, 284 F3d 472, 484 (CA 3, 2002) ("we follow the Supreme Court's admonition that reasonable suspicion cannot be reduced to 'a neat set of rules,' lest our focus on factors in isolation blind us to the 'totality of the circumstances' that must guide our assessment of police behavior."). Hence, the majority's picking apart each reason—not to the extent of saying each was invalid or nonexistent under the facts, but by not being sufficient by themselves—is not the type of analysis that is condoned by a totality of the circumstances test.

Second, even accepting the majority's skepticism (which will be briefly discussed below) of some of the articulated reasons for the detention, *as a whole* the reasons were sufficient to satisfy the relatively low threshold required for reasonable suspicion. See *Arvizu*, 534 US at 274 (recognizing that reasonable suspicion is a somewhat abstract concept not susceptible to stringent rules). Indeed, Officer Moore's original suspicion from the occupants' mannerisms (based on how they were sitting) solidified when defendant did not become relaxed when told that he was only getting a verbal warning, and when the LEIN check came back with "officer safety precaution." It was also clear at that point that the owner of the vehicle was not present. On this record, and because we must give some deference to the experience and training of the officer who is much more capable than an appellate judge to quickly determine what is suspicious activity in the criminal world, I would conclude that reasonable suspicion existed.[2]

---

[2] The majority recognizes that most of the reasons articulated by Officer Moore have been recognized by the courts as legitimate factors, though of course the extent of the conduct varies case by case. See *People v Lewis*, 251 Mich App 58, 72; 649 NW2d 792 (2002), citing *United States v Williams*, 271 F3d 1262, 1268-1269 (CA 10, 2001) (explaining that "extreme nervousness lasting throughout the entire traffic stop should not be ignored under the totality of the circumstances"); *United States v Ludwig*, 641 F3d 1243, 1248 (CA 10, 2011) (explaining that a masking odor could "contribute to a reasonable suspicion calculus"—despite the fact that the

-4-

This brings me to a couple final points. The majority places less significance on some of the articulated reasons than did Officer Moore. But we must be steadfast in remembering that "factors that in isolation appear innocent may, in combination, provide a police officer with reasonable suspicion" to reasonably detain an individual. *People v Oliver*, 464 Mich 184, 193; 627 NW2d 297 (2001), citing *Terry v Ohio*, 392 US 1, 22-23; 88 S Ct 1868; 20 L Ed 2d 889 (1968). "The question is not whether the conduct is innocent or guilty. Very often what appears to be innocence is in fact guilt, and what is indeed entirely innocent may in some circumstances provide the basis for the suspicion required to make an investigatory stop." *People v Nelson*, 443 Mich 626, 632; 505 NW2d 266 (1993). That is why we give some deference to the skills, knowledge, and experience of trained police officers, like Officer Moore, who had 20 years police experience. *Id*. at 636. See also *People v Steele*, 292 Mich App 308, 315; 606 NW2d 753 (2011). What may appear to judges as innocent or benign mannerisms, may appear to a trained and experienced officer on the scene as suspicious conduct warranting further investigation. *United States v Santos*, 403 F3d 1120, 1128 (CA 10, 2005).

In sum, although defendant's argument on appeal focuses on the fact that Officer Moore indicated that he "had a feeling that something was not right" and that "[y]ou could call it a hunch if you wanted it to," Officer Moore's testimony as a whole described specific facts, which amounted to reasonable suspicion when viewed together and in the totality of the circumstances. Officer Moore's testimony demonstrated that he was drawing conclusions based on his experience, and the facts articulated above demonstrate that there was more than "an inchoate or unparticularized suspicion or 'hunch.' " Moreover, the fact that there could have been an innocent explanation for some of the factors relied upon does not negate reasonable suspicion. See *Oliver*, 464 Mich at 203. Viewing the facts as a whole, there was reasonable suspicion to detain defendant in order to conduct a dog sniff, and the trial court did not err in reaching that conclusion.

Although the majority's conclusion renders its review of defendant's second issue-that his motion to suppress should have been granted because the K-9 dog entered the vehicle during the exterior sniff without a warrant-unnecessary, I would conclude that a remand was necessary because the trial court failed to consider the issue and did not make the requisite factual findings to resolve it on appeal.

/s/ Christopher M. Murray

---

masking odor could be consistent with a lawful activity); *United States v Smith*, 601 F3d 530, 542 (CA 6, 2010) (explaining that police "had the following evidence of criminal activity: (1) the car was driving in a known drug corridor, (2) *the car was owned by a third party*, (3) . . . an implausible story about [the] destination," (4) a contradicting story, and (5) an "identification had come back as a false number") (emphasis added); *Santos*, 403 F3d at 1132 (explaining that "in conjunction with other factors, criminal history contributes powerfully to the reasonable suspicion calculus"); and *United States v Brigham*, 382 F3d 500, 508-509 (CA 5, 2004) (explaining that inconsistent statements about travel plans was one of the factors that made law enforcement actions and detention reasonable).