# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

NICHOLAS ASHFORD,

      Defendant-Appellant.

UNPUBLISHED
July 20, 2017

No. 331828
Wayne Circuit Court
LC No. 15-001958-01-FH

Before: MURPHY, P.J., TALBOT, C.J., and O'CONNELL, J.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of felon in possession of a firearm, MCL 750.224f, carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to two years' imprisonment for the felony-firearm conviction and four years' probation for the felon-in-possession and CCW convictions, with the probation term to run concurrently to the felony-firearm sentence. We affirm.

The firearm-related charges arose from a traffic stop during which the police observed and recovered a firearm that was protruding from underneath the driver's seat of the pickup truck that defendant was driving. Defendant had rented the truck, and the vehicle had six other occupants. Defendant ran a red light in front of two partnered officers in their police cruiser, forcing the officer operating the cruiser to brake and swerve to avoid a collision with defendant's truck. The officers activated their red and blue lights and pulled over defendant's rental truck. As the officers approached the truck on foot, they observed the occupants wildly moving around, and there was testimony by a female backseat passenger of the truck that the occupants were attempting to conceal bottles of alcohol. She also indicated that there was marijuana in the truck. One officer testified that he saw the driver, defendant, "reaching forward," "leaning down with his whole body extended forward," "reaching down," and "leaning forward with his hands down." The other officer testified that the driver was "bending" and "leaning" forward. Defendant's movements suggested to the officers that he was attempting to conceal something. Defendant initially did not comply with the officers' commands for the occupants of the truck to stop moving around and to put their hands up. After repeating the commands two or three times, defendant finally showed his hands to officers.

Because of the frantic movements in the truck, and for purposes of safety, the officers directed all of the occupants to exit the truck, including defendant. Once defendant stood up and got out of the truck, the officer standing by the driver's side door observed and recovered a loaded 9 mm Glock that was lying partially underneath the driver's seat, with a portion of the gun's handle openly exposed to the officer's view. There was testimony that defendant had been the only person driving the truck that evening, that the gun was not registered to defendant, and that the police were unable to identify any latent fingerprints on the Glock. The female passenger mentioned above testified that she had not seen defendant with a gun in his possession that night, that she was unaware of any firearm in the truck, that she did not see defendant lean forward as if he was placing something under his seat, and that she did not observe any of the truck's occupants placing a gun or anything else under the driver's seat.

On appeal, defendant first argues that the prosecution failed to present evidence sufficient to show that he "possessed" the firearm found in the vehicle, as necessary to sustain his firearm-related convictions. We disagree. Viewing the direct and circumstantial evidence in a light most favorable to the prosecution, *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002), adhering to the principle that we must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses, *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), appreciating that circumstantial evidence and reasonable inferences arising from such evidence can constitute satisfactory proof of an element of a crime, *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999), including firearm possession, *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011), and resolving all conflicts in the evidence in favor of the prosecution, *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008), we hold that there was sufficient evidence for a rational juror to find that defendant possessed the gun beyond a reasonable doubt.[1]

Despite the absence of any direct evidence that defendant physically possessed the firearm, we conclude that there existed sufficient circumstantial evidence from which it could be reasonably inferred that defendant had *actually* possessed the gun shortly before it was discovered by the police. See *People v Minch*, 493 Mich 87, 91; 825 NW2d 560 (2012) (possession of a firearm can be either actual or constructive). The officers' testimony concerning defendant's failure to immediately comply with their commands and his movements in leaning forward and reaching down as the officers approached the vehicle, which had been rented by defendant and solely driven by him, along with the discovery of the gun partially hidden under the driver's seat moments after defendant's incriminating movements, gave rise to a reasonable inference that defendant physically handled and possessed the firearm in a frantic effort to conceal it from the police. Moreover, this same evidence was sufficient to show that defendant had control over the vehicle and the firearm in it, knowledge of the firearm's location under his

---

[1] "Possession" is an element of felon-in-possession, MCL 750.224f; *People v Bass*, 317 Mich App 241, 268; 893 NW2d 140 (2016), and felony-firearm, MCL 750.227b; *People v Peals*, 476 Mich 636, 640; 720 NW2d 196 (2006); *Johnson*, 293 Mich App at 82-83, and the "carrying" element of CCW has been equated to possession, *People v Butler*, 413 Mich 377, 390 n 11; 319 NW2d 540 (1982).

seat, and reasonable access to the firearm, thereby also establishing *constructive* possession of the gun by defendant. *Minch*, 493 Mich at 92; *People v Flick*, 487 Mich 1, 14; 790 NW2d 295 (2010); *People v Hill*, 433 Mich 464, 470-471; 446 NW2d 140 (1989).

To the extent that others in the truck were also moving about frantically, defendant's specific movements directly correlated to the presence of something under the driver's seat, with no evidence of anyone else placing the gun under the seat, and it was for the jury to assess the weight and relevance to be given to the evidence regarding the movements of others. *Wolfe*, 440 Mich at 514-515. And although the female passenger testified that she did not see defendant moving or leaning forward as claimed by the officers, nor did she see any gun that night, these assertions entailed matters of credibility for the jury to assess, not us. *Id.* The federal cases defendant relies on to support his argument that the evidence was insufficient to establish his possession of the firearm are factually distinguishable from this case. Accordingly, we do not find them to be persuasive. In sum, on de novo review, *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002), the evidence was sufficient to establish possession and the carrying of the firearm by defendant; reversal is unwarranted.

Defendant next argues that the jury's verdicts were against the great weight of the evidence, warranting a new trial. In support, defendant renews the "possession" argument, but couched in terms of great-weight principles. Defendant has failed to demonstrate that the evidence showing possession, either actual or constructive, contradicted indisputable physical facts or law, was patently incredible, defied physical realities, was so inherently implausible that a reasonable juror could not believe the evidence, or was so seriously impeached that it was deprived of all probative value. *People v Lemmon*, 456 Mich 625, 643; 576 NW2d 129 (1998); *People v Bosca*, 310 Mich App 1, 13; 871 NW2d 307 (2015). Because there were no exceptional circumstances, the issue concerning the credibility of the testimony by the officers and the female passenger was for the jury to assess. *Lemmon*, 456 Mich at 642. In sum, the evidence did not preponderate so heavily against the verdicts that it would be a miscarriage of justice to allow the verdicts to stand. *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003).

Defendant next argues that the trial court erred in declining to instruct the jury as he requested on the knowledge element of constructive possession with regard to the felon-in-possession charge, thereby depriving him of his constitutional right to present a defense. In *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002), this Court observed:

> This Court reviews claims of instructional error de novo. This Court also reviews de novo the constitutional question whether a defendant was denied her constitutional right to present a defense. Jury instructions are to be read as a whole rather than extracted piecemeal to establish error. Even if somewhat imperfect, instructions do not warrant reversal if they fairly presented the issues to be tried and sufficiently protected the defendant's rights. The instructions must include all elements of the crime charged and must not exclude consideration of material issues, defenses, and theories for which there is supporting evidence. No error results from the absence of an instruction as long as the instructions as a whole cover the substance of the missing instruction. [Citations omitted.]

With respect to the felon-in-possession charge, the trial court properly instructed the jury that in order to convict defendant, it had to find beyond a reasonable doubt "that the defendant possessed and or transported a firearm in this state" and "that the defendant was previously convicted of a specified felony." See *People v Bass*, 317 Mich App 241, 268; 893 NW2d 140 (2016); MCL 750.224f; M Crim JI 11.38a. Specifically, regarding possession, the court further instructed:

> Possession, possession does not necessarily mean ownership. Possession means that either the person has actual physical control of the thing as I do with the pen I'm now holding, or the person knows the location of the firearm and has reasonable access to it. Possession may be sole where one person alone possesses the firearm. Possession may be joint where two or more people share possession.

This instruction adequately presented the element of possession, namely that possession can be actual or constructive and that constructive possession requires knowledge of the firearm's location and reasonable access to it. See *Hill*, 433 Mich at 470-471; *Johnson*, 293 Mich App at 83. Accordingly, the jury instructions, when read as a whole, properly included the required elements of felon-in-possession, including defendant's knowledge of the firearm in the vehicle; he was not deprived of his constitutional right to present a defense. Moreover, as discussed earlier, the evidence supported a conclusion that defendant had "actual" possession of the gun; therefore, assuming an instructional error, defendant cannot avoid a harmless-error finding, MCL 769.26, because we cannot ascertain whether the jury even contemplated "constructive" possession of the gun. Reversal is unwarranted.

Finally, defendant argues that the trial court erred in denying his motion to suppress the firearm evidence as the fruit of an illegal seizure during the traffic stop in violation of his Fourth Amendment right to be free from unreasonable searches and seizures.[2] "A police officer who witnesses a person violating . . . [the Motor Vehicle Code] . . ., which violation is a civil infraction, may stop the person, detain the person temporarily for purposes of making a record of vehicle check, and prepare and subscribe, as soon as possible and as completely as possible, . . . a

---

[2] A trial court's factual findings at a suppression hearing are reviewed for clear error. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002). "But the application of constitutional standards regarding searches and seizures to essentially uncontested facts is entitled to less deference; for this reason, we review de novo the trial court's ultimate ruling on the motion to suppress." *Williams*, 472 Mich at 313. The Fourth Amendment of the United States Constitution and Const 1963, art 1, § 11, secure the right of the people to be free from unreasonable searches and seizures. *People v Brown*, 279 Mich App 116, 130; 755 NW2d 664 (2008). The touchtone of any Fourth Amendment analysis is reasonableness, and reasonableness is measured by examination of the totality of the circumstances. *Williams*, 472 Mich at 314. "One of the well-established exceptions to the warrant requirement is known as the automobile or motor vehicle exception," which "is premised on an automobile's ready mobility and pervasive regulation[.]" *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000).

written citation[.]" MCL 257.742(1). A traffic stop is generally not unlawful and does not violate the Fourth Amendment if the officer conducting the stop has probable cause or a reasonable and articulable suspicion to believe that a violation of the Motor Vehicle Code had been committed or was occurring. *People v Davis*, 250 Mich App 357, 363; 649 NW2d 94 (2002); *People v Williams*, 236 Mich App 610, 612; 601 NW2d 138 (1999).

Given that defendant ran a red light in front of the officers, the police had a lawful basis to pull over defendant's truck. Defendant does not contest the constitutionality of the initial traffic stop. Instead, defendant challenges the authority of the police officers to additionally order him to get out of the vehicle during the stop. However, once a vehicle has been lawfully stopped for a traffic violation, an officer can order the driver to exit the vehicle without violating the Fourth Amendment. *Arizona v Johnson*, 555 US 323, 331; 129 S Ct 781; 172 L Ed 2d 694 (2009). The additional intrusion of requiring a driver, already lawfully stopped, to step out of the vehicle for the duration of an investigatory stop, is warranted by the interest in officer safety, which outweighs the de minimis extra intrusion. *Id.* Likewise, this Court in *People v Chapo*, 283 Mich App 360, 368; 770 NW2d 68 (2009), ruled that "[a] police officer may order occupants to get out of a vehicle, pending the completion of a traffic stop, without violating the Fourth Amendment's proscription against unreasonable searches and seizures." Accordingly, the police officers did not subject defendant to a constitutionally unreasonable seizure by ordering him to get out of the vehicle incident to the legitimate traffic stop, without further justification.

As defendant exited the truck pursuant to the lawful commands by the police, the one officer observed the partial handle of the gun sticking out from underneath the driver's seat. Because the firearm was in the officer's plain view, while he was lawfully in a position from where he could see the gun, and because the gun's incriminating character was immediately apparent, the officer was entitled to immediately seize the firearm. See *People v Champion*, 452 Mich 92, 101; 549 NW2d 849 (1996); *People v Wilkens*, 267 Mich App 728, 733; 705 NW2d 728 (2005).[3] Therefore, the seizure of the firearm was not unconstitutional and the trial court properly denied defendant's motion to suppress.

Affirmed.

/s/ William B. Murphy
/s/ Michael J. Talbot
/s/ Peter D. O'Connell

---

[3] Additionally, observation of the gun in open view also established probable cause to search under the driver's seat and retrieve the firearm. See *Texas v Brown*, 460 US 730, 739-740; 103 S Ct 1535; 75 L Ed 2d 502 (1983).