*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CORNELIUS MARQUIS HUGHES,

Defendant-Appellant.

UNPUBLISHED
December 3, 2019

No. 344066
Kent Circuit Court
LC No. 17-006787-FH

Before: MURRAY, C.J., and MARKEY and BECKERING, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of one count of receiving and concealing stolen property less than $200, MCL 750.535(5), and three counts of knowingly retaining or possessing a financial transaction device (FTD) without consent, MCL 750.157n(1). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison sentences of 34 to 180 months for each of the three convictions of unlawful retention or possession of an FTD, along with fining defendant $100 for the receiving-and-concealing conviction. We affirm.

On June 22, 2017, the police were called to a neighborhood in East Grand Rapids at 2:40 a.m. The caller reported a suspicious vehicle in the neighborhood, describing a car driving slowly down the road with its lights off. The caller also reported that there had been several recent garage and car burglaries in the neighborhood. Two police officers located the car that the caller had described parked on the side of the street with the key still in the ignition. A few moments after finding the vehicle, one officer noticed defendant walking in the middle of the street despite the presence of sidewalks. Defendant was wearing a dark shirt, dark jeans, and a dark hoodie. The officer approached defendant and asked him why he was walking around so late at night. Defendant explained that he was walking in an effort to lose weight. Defendant connected himself to the parked car, telling the officers that his vehicle had broken down. The police asked for identification and determined that defendant's license was suspended. The officers proceeded to arrest defendant and impounded the car, which started with no issues when the tow-truck driver went to put the vehicle on his truck. An inventory search of the car

produced four wallets that appeared to belong to other individuals. The wallets were found in the trunk of the car.

While in custody, defendant told his parole officer that he had found the wallets and knew two of the individual owners of the wallets. Defendant claimed that he planned to return the wallets to their rightful owners. At trial, all four victims—owners of the wallets—testified that they did not know defendant and that defendant did not have permission to be in possession of their wallets. The wallets of three of the victims had contained credit cards when the wallets went missing, and the three counts of unlawfully retaining or possessing an FTD were based on the evidence regarding these three victims and their recovered wallets. The fourth victim did not have any credit cards in his wallet, and the single count of receiving and concealing stolen property was premised on the evidence concerning this fourth victim and his recovered wallet. The jury found defendant guilty of all four counts. This appeal ensued.

Defendant first argues that the trial court erred in finding that the police officers had reasonable suspicion to stop defendant while he was walking in the street; therefore, the fruits of the unconstitutional seizure, i.e., evidence of the wallets, should have been suppressed. We disagree.

A trial court's factual findings at a suppression hearing are reviewed for clear error. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002). "But the application of constitutional standards regarding searches and seizures to essentially uncontested facts is entitled to less deference; for this reason, we review de novo the trial court's ultimate ruling on the motion to suppress." *Williams*, 472 Mich at 313. The Fourth Amendment of the United States Constitution and Article 1, § 11, of the Michigan Constitution secure the right of the people to be free from unreasonable searches and seizures. See *People v Brown*, 279 Mich App 116, 130; 755 NW2d 664 (2008). The touchstone of any Fourth Amendment analysis is reasonableness, and reasonableness is measured by examination of the totality of the circumstances. *Williams*, 472 Mich at 314.

In *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005), our Supreme Court discussed a *Terry*[1] stop, observing:

> Under certain circumstances, a police officer may approach and temporarily detain a person for the purpose of investigating possible criminal behavior even though there is no probable cause to support an arrest. A brief detention does not violate the Fourth Amendment if the officer has a reasonably articulable suspicion that criminal activity is afoot. Whether an officer has a reasonable suspicion to make such an investigatory stop is determined case by case, on the basis of an analysis of the totality of the facts and circumstances. A

---

[1] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

determination regarding whether a reasonable suspicion exists must be based on commonsense judgments and inferences about human behavior.

Of course, not every encounter between a police officer and a citizen requires this level of constitutional justification. A "seizure" within the meaning of the Fourth Amendment occurs only if, in view of all the circumstances, a reasonable person would have believed that he was not free to leave. When an officer approaches a person and seeks voluntary cooperation through noncoercive questioning, there is no restraint on that person's liberty, and the person is not seized. [Citations and quotation marks omitted.]

Assuming that a "seizure" occurred at the point of initial contact between police and defendant and viewing the totality of the circumstances that confronted the officers, we believe commonsense judgment and inferences gave rise to reasonable suspicion that criminal activity was afoot. The report of the suspicious vehicle that was seen driving slowly in the neighborhood with its lights off, the recent history of area break-ins, the discovery of the vehicle with the key still in the ignition, and defendant's nearby presence wandering in the middle of the street in dark clothing at 2:40 a.m., provided more than adequate evidence amounting to reasonable suspicion.[2] The totality of these circumstances allowed the police to approach and temporarily detain defendant. And defendant's dubious answers to the questions posed to him permitted the detention and questioning to continue, which led to the discovery that defendant's license was suspended, at which point there was probable cause to arrest him.[3] Accordingly, the trial court did not err in denying defendant's motion to suppress the evidence, as the seizure that resulted in the discovery of the evidence was constitutionally sound.

Next, defendant argues that the trial court erred by admitting into evidence his prior conviction for a 2009 home invasion under MRE 404(b)(1). The home invasion conviction, as discussed in the parties' filings and communicated to the jury, entailed defendant's breaking into a garage and stealing credit cards from a purse the owner had left in her car. We review for an abuse of discretion a trial court's decision to admit evidence. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). But whether a rule or statute precludes admission of evidence is a preliminary question of law that this Court reviews de novo. *Id.* When a trial court admits evidence that is inadmissible as a matter of law, the court necessarily abuses its discretion. *Id.* MRE 404(b)(1) provides:

---

[2] "The reviewing court considers the objective facts relating to the . . . [*Terry*] stop; the officer's subjective state of mind is not relevant to the determination whether the detention was proper." *Williams*, 472 Mich at 314 n 7.

[3] Although the trial court should not have relied on defendant's parole status as justification for the brief encounter because the police officers did not know that defendant was on parole until after the encounter began, the elimination of that fact from consideration still yields the same conclusion.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Other-acts evidence is admissible if it is offered for a proper purpose under MRE 404(b), if it is relevant under MRE 401 and 402 as enforced through MRE 104(b), and if the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice under MRE 403. *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993). With respect to the *VanderVliet* test, the *Denson* Court stated:

> Under the first prong of the *VanderVliet* test, the question is whether the prosecution has articulated a proper noncharacter purpose for admission of the other-acts evidence. The prosecution bears the burden of establishing that purpose. MRE 404(b) prohibits the admission of other-acts evidence when the prosecution's only theory of relevance is that the other act demonstrates the defendant's inclination for wrongdoing in general and thus indicates that the defendant committed the conduct in question. On the other hand, such other-acts evidence may be admissible whenever it is also relevant to a noncharacter purpose, such as one of the purposes specifically enumerated in MRE 404(b)(1). [*Denson*, 500 Mich at 398-399 (citations omitted).[4]]

---

[4] In *Denson*, 500 Mich at 400, the Michigan Supreme Court further discussed the "proper purpose" component of the analysis, stating:

> [W]e have warned that a common pitfall in MRE 404(b) cases is that trial courts tend to admit other-acts evidence merely because the proponent has articulated a permissible purpose. The "mechanical recitation" of a permissible purpose, without explaining how the evidence relates to the recited purpose, is insufficient to justify admission under MRE 404(b). It is incumbent on a trial court to vigilantly weed out character evidence that is disguised as something else. In other words, merely *reciting* a proper purpose does not actually demonstrate the *existence* of a proper purpose for the particular other-acts evidence at issue and does not automatically render the evidence admissible. Rather, in order to determine whether an articulated purpose is, in fact, merely a front for the improper admission of other-acts evidence, the trial court must closely scrutinize the logical relevance of the evidence under the second prong of the *VanderVliet* test. [Citations, quotation marks, and alteration omitted.]

In this case, the prosecution filed a pretrial notice that it planned to seek the admission of defendant's prior home invasion conviction, which involved the theft of credit cards, to show intent, one of the enumerated exceptions in MRE 404(b)(1). On appeal, defendant as much as concedes that the prosecution advanced a proper purpose, choosing instead to challenge the evidence on the other *VanderVliet* prongs. We conclude that the record reflected that the prosecutor articulated a proper purpose for introducing the evidence, i.e., to show intent, in light of defendant's claim of innocent possession of the wallets, and not for the purpose of showing criminal propensity.

The second prong of the *VanderVliet* test—logical relevance—implicates MRE 401 and 402 and is the "touchstone" relative to the admissibility of other-acts evidence. *Denson*, 500 Mich at 400-401. "Other-acts evidence is logically relevant if two components are present: materiality and probative value." *Id.* at 401. "Materiality" requires other-acts evidence to be related to a fact that is of consequence in the case, meaning that the fact sought to be proven must truly be at issue. *Id.* In regard to materiality, the *Denson* Court noted that the prosecution has the burden to prove all the elements of a charged crime beyond a reasonable doubt. *Id.*

In the instant case, with respect to one of the elements of receiving and concealing stolen property, the jury was instructed, consistent with M Crim JI 26.1(4), that the prosecutor had to prove that "defendant knew or had reason to know or reason to believe that the property was stolen when he possessed it." With respect to one of the elements of unlawfully possessing or retaining an FTD, the jury was instructed, consistent with M Crim JI 30.3(5), that the prosecutor had to prove that "defendant intended to defraud or cheat someone." Defendant does not dispute that these were elements that the prosecutor had to prove beyond a reasonable doubt. Part of the defense defendant presented and argued to the jury was that the prosecution failed to establish the requisite intent for the crimes at issue. Defendant suggested that the prosecution had not proven anything beyond innocent possession of the wallets. Given the elements of the crimes and defendant's arguments, we must conclude that evidence of the 2009 home invasion that involved defendant's stealing credit cards from a purse located in a garaged car was certainly related to a fact of consequence in this case—defendant's intent. His intent was truly at issue.

Concerning the "probative value" component of the second prong of *VanderVliet*, the *Denson* Court explained:

> Evidence is probative if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Generally, the threshold is minimal: any tendency is sufficient probative force. In the context of prior acts evidence, however, MRE 404(b) stands as a sentinel at the gate: the proffered evidence truly must be probative of something *other* than the defendant's propensity to commit the crime. Thus, although the prosecution might claim a permissible purpose for the evidence under MRE 404(b), the prosecution must also *explain how* the evidence is relevant to that purpose without relying on a propensity inference. Ultimately, the court must determine whether the prosecution has established some intermediate inference, other than the improper inference of character, which in turn is probative of the ultimate issues in the case. If not, the evidence is inadmissible. [*Denson*, 500 Mich at 401-402 (citations omitted).]

-5-

Here, the proffered evidence of the home invasion was truly probative of something other than propensity to commit the crime, and the prosecution sufficiently explained how the evidence was relevant to the issue of intent. The evidence that defendant previously stole credit cards from a purse in the midst of a home invasion made it more probable than not that defendant acted with the requisite intent, which was of consequence, relative to the current offenses.

We note that contrary to defendant's argument, "[w]hen other acts are offered to show *intent*, logical relevance dictates only that the charged crime and the proffered other acts are of the same general category." *VanderVliet*, 444 Mich at 79-80 (emphasis added; quotation marks and citations omitted). "The level of similarity required when disproving innocent intent is less than when proving modus operandi." *Id.* at 80 n 36; see also *People v Mardlin*, 487 Mich 609, 622; 790 NW2d 607 (2010). That said, the other-acts evidence was very similar to the charged acts.

The third *VanderVliet* prong of the test provides that the probative value of the other-acts evidence cannot be substantially outweighed by the danger of unfair prejudice. *Denson*, 500 Mich at 398. The third prong simply requires the trial court to employ the balancing process set forth in MRE 403. *VanderVliet*, 444 Mich at 74-75. MRE 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

"All evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). MRE 403 prohibits the admission of marginally probative evidence that will likely be given undue weight—that is, "evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect." *Id.* at 75-76 (quotation marks and citation omitted). As noted earlier, evidence has probative value if it tends to make the existence of a material fact "more probable or less probable than it would be without the evidence." *People v Crawford*, 458 Mich 376, 389-390; 582 NW2d 785 (1998).

Defendant is correct that the trial court failed to discuss MRE 403 in analyzing the MRE 404(b) argument, but in defendant's motion in limine, he focused solely on asserted differences between the prior bad act and the instant offenses, absent any real discussion of MRE 403. As already ruled above, the other-acts evidence was probative on the issue of defendant's intent, and while the evidence was prejudicial, it was not *unfairly* prejudicial, nor was the probative value of the evidence *substantially* outweighed by the danger of unfair prejudice. The other-acts evidence was more than marginally probative on the issue of intent. We also note that the trial court gave the jury a limiting instruction on use of the other-acts evidence during deliberations, thereby minimizing any prejudice. See *Denson*, 500 Mich at 398 (the fourth prong of *VanderVliet* allows a limiting instruction to be given); *People v Magyar*, 250 Mich App 408, 416; 648 NW2d 215 (2002) ("This Court has indicated that a limiting instruction such as this one that cautions the jury not to infer that a defendant had a bad character and acted in accordance with that character

can protect the defendant's right to a fair trial."). In sum, the trial court did not err in admitting evidence of defendant's 2009 home invasion conviction and reversal is unwarranted.

Defendant next argues that there was insufficient evidence to support his convictions. This Court reviews de novo the issue regarding whether there was sufficient evidence to support a conviction. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Circumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "All conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

With respect to the receiving-and-concealing conviction, defendant contends that the prosecution presented insufficient evidence to show that the relevant victim's wallet was actually stolen, as opposed to simply being lost, and to show that the wallet had a value of less than $200. The prosecutor did have to establish that the wallet had been stolen and that it had a value in some amount less than $200. M Crim JI 26.1(2) and (6); MCL 750.535(5). In *People v Pratt*, 254 Mich App 425, 428; 656 NW2d 866 (2002), this Court construed the word "stolen" as used in MCL 750.535, concluding that "[f]or goods to be considered stolen . . ., they need only be taken without permission or right; thus, 'stolen' goods encompass a broader category than just goods taken by larceny."

The victim testified that it was possible that he had misplaced or lost his wallet. The victim also testified that defendant did not have permission to have his wallet, that there would be no reason for defendant to have his wallet, that he did not even know defendant, and that he noticed the wallet was missing about a month before the police informed him of its discovery. Viewing the evidence in a light most favorable to the prosecution and appreciating that circumstantial evidence and reasonable inferences arising from the evidence can establish proof of a crime, we find there was sufficient evidence that the wallet was stolen. Assuming that the wallet was initially misplaced by the victim, we note the fact remains that it was found a month later in the trunk of defendant's car under circumstances that reasonably indicated that defendant was engaged in criminal activity. Moreover, there was no relationship or connection between the victim and defendant. Further, there was evidence that defendant lied to the police and lied to his parole officer. Thus, even if initially lost, a reasonable inference arising from all of the evidence is that, at some point in time, the wallet was possessed and retained by defendant without the victim's permission and without intent to return it to the victim. In other words, the wallet acquired "stolen" status, even if it was not initially stolen, which we find highly unlikely.

In regard to the value of the wallet, a photograph of which was presented to the jury, one could reasonably infer that it had some value under $200; a penny would have sufficed. We note that the victim testified that there had been a gift card in the wallet. In sum, the evidence was sufficient to support the conviction for receiving and concealing stolen property.

In regard to the convictions for unlawfully retaining or possessing the FTDs, defendant maintains that the prosecution failed to submit sufficient evidence showing that he had a fraudulent intent while possessing the wallets. "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *Kanaan*, 278 Mich App at 622.

As noted earlier, the prosecutor had to prove that defendant intended to defraud or cheat someone. M Crim JI 30.3(5). It can reasonably be inferred from all of the surrounding circumstances, which we have discussed at length above, that defendant intended to defraud or cheat the three victims who had credit cards in their wallets. This evidence consisted of defendant's suspicious behavior when he was stopped, his lies, the discovery of the wallets in the trunk of his car, the absence of permission for defendant to possess the wallets, and his lack of any relationship with the victims.

One of the victims testified that after his wallet and credit card went missing, there were no charges to his credit card. The credit card was still in the wallet when found in defendant's trunk. The fact that the credit card had not actually been used does not mean that defendant possessed the credit card without intent to defraud or cheat the victim. The prosecutor did not have to prove that defendant used the FTDs. See M Crim JI 30.3. There was evidence that another victim had a credit card that was still in the wallet when it was found in defendant's car and that the card had not been used. Again, the lack of use of the credit card does not translate to an absence of intent to defraud and cheat. Moreover, this same victim testified that he also had a debit card in the wallet, that the card was not recovered, and that the debit card had been used in unauthorized transactions. This evidence, in conjunction with all the other evidence, supported the inferences that defendant used that debit card without consent and that he had the intent to similarly use the credit card, although he had not yet done so. With respect to the third victim, there was evidence that one of his credit cards was still in his wallet when found by police, but that a second credit card that had been in his wallet was missing. Although there was no testimony about whether either credit card had been used, the fact that one of the credit cards was missing constituted further evidence of defendant's intent to defraud and cheat the victim.[5]

Viewing the evidence in a light most favorable to the prosecution and appreciating that circumstantial evidence and reasonable inferences arising from the evidence can establish proof of a crime, we find there was sufficient evidence to establish that defendant acted with the intent to defraud and cheat the three victims with regard to the offense of unlawfully possessing or retaining an FTD.

---

[5] We note that simply intending to deprive the victims of using their own credit cards can be viewed as having the intent to defraud and cheat the victims.

Lastly, defendant contends that the prosecutor improperly shifted the burden of proof to defendant when he commented that he "didn't hear one explanation [from defendant] for having four different people's wallets." We review de novo this preserved argument of prosecutorial misconduct "to determine if the defendant was denied a fair and impartial trial." *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). "A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010).

Assuming misconduct or error by the prosecutor, we conclude the brief reference did not deny defendant a fair and impartial trial. In light of the strong evidence of guilt, any presumed error was harmless because we cannot find that it is more probable than not that a different outcome would have resulted absent the error; there was no miscarriage of justice. See MCL 769.26; *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999).

We affirm.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Jane M. Beckering

-9-