*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
March 17, 2022

v

WARREN EMANUAL-LYDELL CLARK,

        Defendant-Appellant.

No. 353829
Berrien Circuit Court
LC No. 2019-002828-FH

Before: O'BRIEN, P.J., and SHAPIRO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree home invasion, MCL 750.110a(2), carrying a concealed weapon, MCL 750.227, felon in possession of a firearm, MCL 750.224f, felon in possession of ammunition, MCL 750.224f(6), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced, as a second-offense habitual offender, MCL 769.10, to 12½ to 30 years' imprisonment for his first-degree home invasion conviction, 2 to 7½ years' imprisonment for his convictions of carrying a concealed weapon, felon in possession of a firearm, and felon in possession of ammunition, and two years' imprisonment for his felony-firearm conviction. We affirm.

This case arises out of a July 30, 2019 home invasion in Sodus Township, Michigan. Shortly after the home invasion occurred, a traffic stop was effectuated in nearby Watervliet of a Chevrolet Cobalt operated by defendant and occupied by three other men. Incriminating evidence was found inside the vehicle, including a .45-caliber handgun, two BB guns, masks, and latex gloves similar to gloves recovered near the scene of the crime. The vehicle also contained shards of grass similar to tall grass located in a field near the crime scene. Police officers found tire tracks in that grassy field after the home invasion. In addition to the evidence recovered from the Cobalt, Danarus Chatwood—one of the occupants of the Cobalt when it was stopped—testified at defendant's trial pursuant to a plea agreement. Chatwood described defendant's role in the home invasion, including that defendant carried the .45-caliber gun, used a BB gun to shoot out a window to gain entry to the house, and entered the house.

In a pretrial motion, defendant challenged the legality of the traffic stop and moved to suppress evidence recovered from the Cobalt, but the trial court denied the motion. After the jury found defendant guilty, defendant moved to set aside the verdict and grant a new trial, arguing in part that his conviction was obtained through the knowing use of Chatwood's allegedly perjured testimony. The trial court denied the motion. After defendant was sentenced, this appeal ensued.

In his principal brief on appeal, defendant argues that the trial court erred in denying his motion to suppress evidence. We disagree.

"This Court reviews a trial court's findings at a suppression hearing for clear error." *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). Clear error exists when the reviewing court is definitely and firmly convinced that the trial court made a mistake. *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018). Deference is afforded to the trial court's assessment of the credibility of witnesses. *People v Galloway*, 259 Mich App 634, 638; 675 NW2d 883 (2003). This Court reviews de novo whether the Fourth Amendment was violated and whether the trial court's ultimate ruling on the motion to suppress was correct. *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009).

"US Const, Am IV, and Const 1963, art 1, § 11, guarantee the right of the people to be free from unreasonable searches and seizures." *People v Brown*, 279 Mich App 116, 130; 755 NW2d 664 (2008). A traffic stop amounts to a seizure under the Fourth Amendment. *People v Campbell*, 329 Mich App 185, 196; 942 NW2d 51 (2019). If an officer has probable cause to believe that a traffic violation has occurred or was occurring, then the resulting stop is reasonable and does not violate the Fourth Amendment. *People v Marcus Davis*, 250 Mich App 357, 363; 649 NW2d 94 (2002); *People v Williams*, 472 Mich 308, 314-315; 696 NW2d 636 (2005); *Whren v United States*, 517 US 806, 810; 116 S Ct 1769; 135 L Ed 2d 89 (1996). "Probable cause requires a quantum of evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003) (quotation marks and citation omitted).

Watervliet Police Officer Joshua Allen testified that he effectuated the traffic stop of the Cobalt because he suspected that the driver was operating the vehicle while intoxicated. Officer Allen explained that his suspicion arose after he (1) observed the Cobalt swerve into the center turn lane before Officer Allen's dashboard camera began recording, (2) observed the Cobalt swerving within its own lane, and (3) believed that the Cobalt was speeding down a hill near the edge of town.

The trial court credited Officer Allen's testimony about the Cobalt swerving into the center turn lane before Officer Allen's dashboard camera began recording, but concluded that the swerving did not by itself provide a sufficient basis for believing that the driver was operating while intoxicated. As for Officer Allen's testimony about the Cobalt's alleged movement within its own lane, the trial court noted that in the dashboard recording of the stop, it was difficult to tell whether the Cobalt swerved enough to touch the fog line but that the car certainly did not cross over the fog line. Regardless, like with the Cobalt's swerving into the center lane, the court determined that the Cobalt's movements within its own lane, standing alone, did not justify the traffic stop.

Nevertheless, crediting Officer Allen's testimony about his observation of the Cobalt speeding, the trial court ruled that the stop was sufficiently justified. The court noted that the dashboard camera footage, which included the Global Positioning System (GPS) speed information, showed the Cobalt traveling in excess of the 30 mile-an-hour limit and pulling away from Officer Allen's vehicle as they went downhill. Although Officer Allen could not see the GPS speed information while he was driving and could not recall whether he looked at his speedometer, the court took note of Officer Allen's extensive experience driving on that road and his perception of the Cobalt speeding as it pulled away from the police vehicle.[1]

On appeal, defendant argues that the only evidence of the Cobalt speeding was the GPS speed information that Officer Allen admittedly did not see before making the stop, that Officer Allen could have used radar equipment or paced the Cobalt using his speedometer but did not, and that Officer Allen's observations about the Cobalt speeding were not sufficient to justify the stop. Contrary to defendant's argument, neither a speed-measurement device nor pacing is necessary for an officer to justify stopping a vehicle for a speeding violation. See *United States v Monzon-Gomez*, 244 F Appx 954, 959 (CA 11, 2007) (explaining that "the Fourth Amendment does not require the use of radar detection to establish probable cause to believe a motorist is speeding"). See also generally *State v Allen*, 978 So 2d 254 (Fla App, 2008) (collecting cases from various jurisdictions supporting the proposition that a speed-measurement device or pacing is not necessary to justify a stop, and that the officer's visual observation of the defendant traveling at a high rate of speed is adequate).[2] The pertinent issue for assessing the legality of a stop is whether the evidence was sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief that the defendant was violating the law—in this case, speeding. Officer Allen's testimony about his observations that the Cobalt was speeding based upon his experience driving on that road and his perception of the Cobalt speeding as it pulled away from Officer Allen's vehicle—testimony that the trial court credited—was sufficient to establish probable cause to believe that defendant was speeding. See *Monzon-Gomez*, 244 F Appx at 959 ("The Fourth Amendment plainly does not prohibit a law enforcement officer from pulling over a motorist for suspected speeding whenever the officer is acting solely on the basis of his visual observation."). Accordingly, the trial court did not err in finding that the traffic stop was justified, and it properly denied defendant's motion to suppress evidence.

Next, defendant argues in his Standard 4 brief that the prosecutor committed misconduct by knowingly using Chatwood's allegedly perjured testimony at trial. We disagree.

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Although defendant's posttrial motion to set aside the verdict

---

[1] During an exchange with defense counsel, the trial court noted that Officer Allen testified "that he's driven that road thousands of times and believed he was traveling the speed limit based upon that experience, and that so was the car in front of him until it pulled away from him."

[2] "While the decisions of lower federal courts and other state courts are not binding on this Court, they may be considered as persuasive authority." *People v Woodard*, 321 Mich App 377, 385 n 2; 909 NW2d 299 (2017).

and for a new trial suggested that there was a knowing use of Chatwood's perjured testimony, defendant did not contemporaneously object on this basis and request a curative instruction at trial. Therefore, the issue is unpreserved for appellate review.

Issues of prosecutorial misconduct are ordinarily "reviewed de novo to determine whether the defendant was denied a fair and impartial trial." *Bennett*, 290 Mich App at 475. But when the issue is unpreserved, this Court's review is limited to plain error affecting substantial rights. *Id*. A defendant must demonstrate that an error occurred, that it was clear or obvious, and that it was prejudicial, i.e., that it affected the outcome of the proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Bennett*, 290 Mich App at 475-476 (quotation marks and citation omitted).

This Court has explained:

> It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment. If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. Stated differently, a conviction will be reversed and a new trial will be ordered, but only if the tainted evidence is material to the defendant's guilt or punishment. Thus, it is the misconduct's effect on the trial, not the blameworthiness of the prosecutor, which is the crucial inquiry for due process purposes. The entire focus of our analysis must be on the fairness of the trial, not on the prosecutor's or the court's culpability. [*People v Bass*, 317 Mich App 241, 272-273; 893 NW2d 140 (2016) (citation omitted).]

Defendant argues in his Standard 4 brief that the prosecutor committed misconduct by knowingly using Chatwood's perjured testimony. We find this argument unconvincing because defendant has failed to establish that Chatwood committed perjury at trial, let alone that the prosecutor knowingly used such perjured testimony.

At trial, Chatwood made statements that were inconsistent with statements that he gave while under oath at a previous court hearing. In one instance, despite previously denying entering the house and claiming that he stayed at the car, Chatwood testified for the first time at defendant's trial that he went into the house and saw what defendant did to gain entry to the house. In another instance, despite testifying at an earlier hearing that defendant put the gun under the seat when they were pulled over in Watervliet, Chatwood testified at trial that defendant handed the gun to another occupant and told him to put it under the seat. Chatwood was impeached at trial with his

prior inconsistent statements, and he further admitted that he had lied regarding certain matters in the earlier court hearing.[3]

This, however, does not by itself establish that Chatwood committed perjury *at trial* and that the prosecutor knowingly used perjured testimony. "Although an inconsistent prior statement may be a mechanism to impeach a witness's credibility at trial, it is not definitive evidence that the trial testimony is false." *Bass*, 317 Mich App at 275. Therefore, "because defendant has failed to show that the testimony elicited by the prosecution was actually false, he cannot meet his burden of demonstrating that the elicitation of such testimony constituted plain error that affected his substantial rights." *Id*. at 272. The jury was fully informed of Chatwood's prior inconsistent testimony and statements, and it was the jury's role to determine Chatwood's credibility and the weight of his trial testimony. See *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008) (noting that "[i]t is the jury's task to weigh the evidence and decide which testimony to believe[]" and that this Court "will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses[]") (quotation marks and citation omitted).

Defendant also tersely suggests that the prosecutor improperly bolstered or vouched for Chatwood's testimony. A prosecutor may not vouch for the credibility of a witness by suggesting that the prosecutor has some special knowledge regarding the witness's truthfulness. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). But a prosecutor may argue from the facts that a witness should be believed. *Id*. Although his argument on this issue is cursory and confusing, it appears that defendant is challenging the prosecutor's rebuttal during closing arguments regarding Chatwood's testimony. Consistent with the testimony elicited on redirect examination of Chatwood, the prosecutor noted in rebuttal that certain details added by Chatwood at trial were self-incriminating, that Chatwood claimed to have received threats in jail before his preliminary examination testimony, and that Chatwood was not escaping punishment because he had already served jail time and could serve more jail time. Defendant has identified nothing in the record to establish improper vouching. The prosecutor did not suggest some special knowledge regarding Chatwood's truthfulness. Rather, the prosecutor merely argued from the facts in evidence that Chatwood's trial testimony should be believed. Defendant's cursory argument on this point is therefore unavailing.[4]

---

[3] Chatwood testified at trial that his false testimony at an earlier hearing was attributable at least in part to threats he had received in jail.

[4] In a motion to remand, defendant asked this Court to remand the case to the trial court so that defendant could raise issues with respect to the scoring of certain offense variables. That motion was denied "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *People v Clark*, unpublished order of the Court of Appeals, issued May 19, 2021 (Docket No. 353829). Defendant, however, did not raise these issues in either his principal brief on appeal or his Standard 4 brief. Thus, the issues have not been properly presented on appeal, and we decline to address them.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Douglas B. Shapiro
/s/ Mark T. Boonstra