PER CURIAM.
This case concerns the constitutionality of a traffic stop. After stopping defendant’s vehicle for speeding, a state trooper asked defendant routine questions about his travel plans and obtained his consent to search the vehicle. Cocaine and marijuana were discovered during the search. Defendant argues, and the Court of Appeals determined, that his consent was invalid because his detention exceeded the proper scope of a traffic stop, in violation of the Fourth Amendment. The Court of Appeals held that the trial court should have suppressed the fruits of the search.[1]
We conclude that the detention was reasonable and did not exceed the proper scope of a traffic stop. Because defendant’s Fourth Amendment rights were hot violated as a result of the detention, his consent was valid. We reverse the judgment of the Court of Appeals and remand this case to the trial court for reinstatement of defendant’s convictions and sentences.
I. BACKGROUND
On February 14,2003, Michigan State Police Trooper Jason Varoni observed defendant’s vehicle traveling eighty-eight miles an hour on 1-75 in Cheboygan County, where the posted speed limit was seventy miles an hour. He stopped defendant’s vehicle. Upon request, defendant produced his driver’s license. Trooper Varoni told defendant why he had been stopped and asked defendant where he was going. Defendant answered that he was going to Cheboygan to visit friends and that he was staying at the Holiday Inn.
*311 Because Cheboygan does not have a Holiday Inn, Trooper Varoni was suspicious of this response and asked defendant to step from the vehicle to answer additional questions. Defendant did so and, in response to further questioning, explained that he was coming from Detroit and that he intended to stay in Cheboygan for two days. No luggage was visible in the vehicle’s passenger compartment; when asked about this, defendant said that he brought no luggage on the trip. Trooper Varoni asked defendant if he had “been in trouble before,” and defendant disclosed that he had previously been arrested for a marijuana-related offense.
Trooper Varoni then questioned the vehicle’s other two occupants about their own travel plans, but their inconsistent responses only increased his suspicions.[2] This questioning was completed about five to eight minutes after the traffic stop occurred. Trooper Varoni then informed defendant that he had received conflicting stories from the occupants of the vehicle. He asked for defendant’s consent to search the vehicle, and defendant agreed.
Trooper Varoni contacted the Tuscarora Township canine unit, and asked that a drug-detection dog be sent to the scene. The canine unit arrived within three minutes and the dog signaled the presence of narcotics in the backseat of the vehicle. Trooper Varoni did not find any narcotics in that area, and he asked defendant for consent to search the vehicle’s trunk. Defendant initially agreed, but then withdrew his consent. A *312 warrant was obtained, and the police discovered substances that appeared to be marijuana and cocaine.[3] Trooper Varoni wrote defendant a citation for speeding and two drug-related felonies, and arrested him.
Defendant was charged with possession with intent to deliver fifty grams or more but less than 225 grams of a substance containing cocaine, MCL 333.7401(2)(a)(iii), and possession with intent to deliver marijuana, MCL 333.7401(2) (d) (iii). He moved to suppress evidence of the controlled substances seized from his vehicle, asserting that the search[4] and seizure were predicated on an illegal detention. The trial court denied the motion. It concluded that the statements made by the occupants of the vehicle raised reasonable suspicions in Trooper Varoni’s mind. It further concluded that the delay caused by the additional questioning was not unreasonable under the circumstances presented.
Defendant was convicted as charged following a bench trial, and was sentenced to consecutive prison terms of seven to twenty years (for the cocaine conviction) and two to four years (for the marijuana conviction).
Defendant appealed, challenging the trial court’s denial of his motion to suppress, and the Court of Appeals reversed. Concluding that the initial traffic stop had been lawful, the Court then determined that the trooper “unlawfully exceeded the initial stop when he asked defendant to step out of the vehicle” to answer questions about his travel plans while the officer pos *313 sessed only a “generalized hunch” that criminal activity was afoot. The trooper’s questions had no relevance to the traffic stop, the Court held, and he had no reasonable suspicion of criminal activity to warrant asking the questions. The Court concluded that Trooper Varoni was acting on a “hunch,” which is insufficient grounds for pursuing an investigatory stop. For these reasons, it reversed the trial court’s ruling on the motion to suppress.
The prosecutor applied to this Court for leave to appeal.
H. STANDARD OF REVIEW
This Court reviews a trial court’s findings at a suppression hearing for clear error. People v Jenkins, 472 Mich 26, 31; 691 NW2d 759 (2005); People v Custer, 465 Mich 319, 325-326; 630 NW2d 870 (2001). But the application of constitutional standards regarding searches and seizures to essentially uncontested facts is entitled to less deference; for this reason, we review de novo the trial court’s ultimate ruling on the motion to suppress. Jenkins, supra; People v Oliver, 464 Mich 184, 191-192; 627 NW2d 297 (2001).
III. ANALYSIS
We review here the Court of Appeals determination that the traffic stop escalated into an illegal detention in violation of the Fourth Amendment, rendering defendant’s eventual consent to search a nullity.
The Fourth Amendment of the United States Constitution provides:
The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall *314 issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[5]
In assessing the protections created by this amendment, the United States Supreme Court has “long held that the ‘touchstone of the Fourth Amendment is reasonableness.’ ” Ohio v Robinette, 519 US 33, 39; 117 S Ct 417; 136 L Ed 2d 347 (1996) (citation omitted). Reasonableness is measured by examining the totality of the circumstances. Id. Because of “ ‘endless variations in the facts and circumstances’ ” implicating the Fourth Amendment, reasonableness is a fact-intensive inquiry that does not lend itself to resolution through the application of bright-line rules. Id., quoting Florida v Royer, 460 US 491, 506; 103 S Ct 1319; 75 L Ed 2d 229 (1983).
In analyzing the propriety of the detention here, we apply the standard set forth in Terry v Ohio, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).[6] Under Terry, the reasonableness of a search or seizure depends on “whether the officer’s action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.”[7] Terry, supra at 20.
In this case, there is no dispute that the initial traffic stop was occasioned by defendant’s speeding, and was therefore based on probable cause and was reasonable. *315 Robinette, supra at 38. Under Terry, the remaining question is whether the subsequent detention was “reasonably related in scope to the circumstances” of this case. Terry, supra at 20. We conclude that it was.
As a threshold matter, the Court of Appeals erred when it agreed with defendant that the purpose of this traffic stop was fully effectuated when defendant handed Trooper Varoni his driver’s license and other requested paperwork. This view of the essential nature of the traffic stop imposes an unreasonable restriction on an officer’s ability to investigate a violation of the law.
A traffic stop is reasonable as long as the driver is detained only for the purpose of allowing an officer to ask reasonable questions concerning the violation of law and its context for a reasonable period.[8] The determination whether a traffic stop is reasonable must necessarily take into account the evolving circumstances with which the officer is faced. As we observed in People v Burrell, 417 Mich 439, 453; 339 NW2d 403 (1983), when a traffic stop reveals a new set of circumstances, an officer is justified in extending the detention long enough to resolve the suspicion raised.[9]
*316 It is no violation of the Fourth Amendment for an officer to ask reasonable questions in order to obtain additional information about the underlying offense and the circumstances leading to its commission. For example, in addition to asking for the necessary identification and paperwork, an officer may also ask questions relating to the reason for the stop, including questions about the driver’s destination and travel plans. United States v Williams, 271 F3d 1262, 1267 (CA 10, 2001).[10] Specifically, an officer may ask about the “purpose and itinerary of a driver’s trip during the traffic stop” in order to determine whether a “violation has taken place, and if so, whether a citation or warning should be issued or an arrest made.” United States v Brigham, 382 F3d 500, 508 (CA 5, 2004). Such inquiries are “within the scope of investigation attendant to the traffic stop.” Id.
Implicit in the authority to ask these questions is the authority to ask follow-up questions when the initial answers given are suspicious.[11] Likewise, there is no constitutional prohibition against asking similar questions of any passengers in the vehicle.[12]
Simply put, the Fourth Amendment does not impose a “one size fits all” rule of police investigation,[13] much less one that restricts the officer to informing the driver of the nature of the infraction, and subsequently ob- *317 taming the information necessary to fill out a citation. The Fourth Amendment requires only that the detention be reasonable — that is, that it be reasonably restricted in light of all the facts available to the officer. See Robinette, supra at 39.
That standard was satisfied here. Trooper Varoni introduced himself to defendant, explained the purpose of the stop, and obtained the necessary identification and paperwork in order to complete the citation for the civil infraction of speeding. In response to a routine question about his travel plans, defendant provided Trooper Varoni with an explanation that was implausible.[14] Therefore, even before Trooper Varoni could resolve the matter of defendant’s violation of the traffic laws, he was presented with additional suspicious circumstances that warranted further investigation.
Trooper Varoni acted on these new suspicions by asking defendant additional questions about his travel plans and whether he had been in trouble before, and by briefly speaking with the vehicle’s occupants. None of the answers provided by defendant or his companions allayed Trooper Varoni’s suspicions. Moreover, the entire encounter took only five to eight minutes, at which time Trooper Varoni requested and obtained defendant’s consent to search the vehicle.
After reviewing the facts and evaluating the totality of the circumstances, we conclude that the traffic stop here was reasonable in both scope and duration.
It follows that defendant was not being unlawfully detained when he was asked to consent to the search. *318 Consent must be freely and voluntarily given in order to be valid. People v Borchard-Ruhland, 460 Mich 278, 294; 597 NW2d 1 (1999); Royer, supra at 497. An investigatory stop, as occurred in this case, is not so inherently coercive that it renders involuntary consent given during the stop. Royer, supra at 501, 502; People v Acoff, 220 Mich App 396, 400; 559 NW2d 103 (1996). There is no suggestion that defendant was coerced into giving his consent.[15]
It is unnecessary to consider whether Trooper Varoni had an independent, reasonable, and articulable suspicion that defendant was involved with narcotics, or even whether the Fourth Amendment might impose such a requirement under different circumstances.[16] The detention and search here were reasonable because: (1) the initial traffic stop was lawful, (2) Trooper Varoni’s questions about defendant’s travel plans, and his limited follow-up,- were reasonable and did not exceed the proper scope and duration of the initial traffic stop, and (3) after Trooper Varoni concluded his questioning, defendant voluntarily consented to the search of the vehicle. All in all, rather than amounting to a constitutional violation, we find that Trooper Varoni’s work in this case amounted to excellent police work. The trial court properly denied defendant’s mo *319 tion to suppress evidence of the controlled substances found during the search of his vehicle.
IV CONCLUSION
Because the detention was reasonable and did not constitute a violation of defendant’s Fourth Amendment rights, we reverse the judgment of the Court of Appeals and remand this case to the trial court for reinstatement of defendant’s convictions and sentences. MCR 7.302(G)(1).
Taylor, C.J., and Cavanagh, Weaver, Corrigan, YOUNG, and Markman, JJ., concurred.

 Unpublished opinion per curiam, issued August 5, 2004 (Docket No. 249853).

 The front-seat passenger claimed that he did not know where they were going or how long they would be gone; he confirmed that he had no luggage. The backseat passenger, defendant’s wife, told Trooper Varoni that they were going shopping in Cheboygan and then Detroit. She said that they had made no arrangements for accommodations.

 This was confirmed through later testing.

 Defendant disputes the validity of the initial search of the car; he does not separately challenge the validity of the later search of the trunk, which was conducted after Trooper Varoni obtained a search warrant and which led to the discovery of the controlled substances.

5 US Const, Am IV

 Knowles v Iowa, 525 US 113, 117; 119 S Ct 484; 142 L Ed 2d 492 (1998) (despite existence of probable cause, a common traffic stop is more analogous to limited detention authorized by Terry than to an arrest) (quoting Berkemer v McCarty, 468 US 420, 439-440; 104 S Ct 3138; 82 L Ed 2d 317 [1984]).

 The reviewing court considers the objective facts relating to the traffic stop; the officer’s subjective state of mind is not relevant to the determination whether the detention was proper. Oliver, supra at 199.

 There is considerable discretion allowed an officer charged with enforcing the traffic laws as a member of the executive branch of government. This discretion can be exercised effectively only if an officer is allowed to ask reasonable questions concerning the context of a traffic offense. To deny an officer the ability to ask reasonable questions, reasonably circumscribed in scope and duration, is to deny the officer the ability to reasonably exercise the officer’s discretion.

 Put another way, when considering whether a detention is reasonably related in scope to the circumstances of the case, a reviewing court must consider whether “the officer’s subsequent actions were fairly responsive to the emerging tableau — the circumstances originally warranting the stop, informed by what occurred, and what the officer learned, as the stop progressed.” United States v Chhien, 266 F3d 1, 6 (CA 1, 2001).

 See also United States v Givan, 320 F3d 452, 459 (CA 3, 2003); United States v Linkous, 285 F3d 716, 719 (CA 8, 2002); United States v Hill, 195 F3d 258, 268 (CA 6, 1999); United States v Johnson, 58 F3d 356, 357 (CA 8, 1995).

 United States v Johnson, 58 F3d 356, 357-358 (CA 8, 1995).

 Linkous, supra at 719 (an officer may question the occupants of a vehicle to verify information provided by the driver).

 See Robinette, supra at 39 (“In applying this test we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry.”).

 The Court of Appeals stated that there were “plausible” innocent explanations for the statements made by the vehicle occupants. But the fact that such explanations can be imagined does not mean that Trooper Varoni acted unreasonably in seeking to resolve the inconsistencies. See Oliver, supra at 204.

 Defendant’s own actions show that he understood that he could refuse the request. He later declined to consent to a search of the trunk.

 One aspect of an officer’s ability to conduct a drug search without independent, articulable, and reasonable suspicion was addressed in Illinois v Caballes, 543 US_; 125 S Ct 834; 160 L Ed 2d 842 (2005). Employing the reasonableness standard of Robinette, the United States Supreme Court held that, as long as the traffic stop is not prolonged, an officer may use a drug-detection dog to sniff a vehicle during the stop, even if the defendant does not consent and the officer lacks reasonable, articulable suspicion that the occupants of the vehicle are involved with narcotics.