# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KENYAN ALFONSO BOOKER,

Defendant-Appellant.

UNPUBLISHED
June 30, 2016

No. 325977
Wayne Circuit Court
LC No. 14-006851-FC

Before: M. J. KELLY, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions on five counts of armed robbery, MCL 750.529, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and felon in possession of a firearm, MCL 750.224f. We affirm, but remand for further sentencing proceedings consistent with this opinion.

Defendant robbed five people at a gas station in Detroit. The five people were at the gas station because their car got a flat tire while they were driving on Interstate 75. Defendant and his accomplice were seen standing outside of the gas station store and they were dressed all in black. Defendant was holding a gun to his side. As soon as defendant's accomplice began approaching them, the five people immediately got back into their car. Then defendant approached, stood in front of the vehicle, pointed the gun at the windshield, and fired the gun. The bullet hit the upper corner of the windshield and ricocheted off. Defendant then ordered two of the people out of the vehicle and demanded they give him whatever they had in their possession. After defendant took their possessions, an off-duty Detroit public school officer appeared on the scene, identified himself as an officer, and told the assailants to "freeze." The assailants ran, and multiple shots were fired at them. The two assailants were seen getting into a gray van. Later the police were notified of a nonfatal shooting; defendant was the victim who had been treated and released from a hospital. He was located at a house and there was a gray van parked in front of the house that belonged to defendant's girlfriend. Later, when shown a photographic lineup, the off-duty school officer identified defendant as the armed assailant, as did two of the victims. Subsequently, defendant was convicted on all counts.

On appeal, defendant argues that the trial court clearly erred in admitting evidence related to the photographic identification of him as the armed robber by two of the victims because (1) he was in custody at the time so a corporeal lineup should have been conducted, (2) he was not

-1-

represented by counsel at the photographic lineup, and (3) the photographic lineup was unduly suggestive. We disagree with all of defendant's claims.

An appellate court will not disturb a trial court's ultimate determination in a *Wade*[1] hearing unless it was clearly erroneous. *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013). A trial court's factual findings in a suppression hearing are also reviewed for clear error. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). A finding is clearly erroneous when this Court is left with a definite and firm conviction that the trial court made a mistake. *McDade*, 301 Mich App at 356. Issues of law that arise in a suppression hearing are reviewed de novo. *Id*.

First, defendant claims that a corporal lineup should have been conducted because he was in the custody of the Michigan Department of Corrections (MDOC) for a parole violation at the time of the photographic lineup. Defendant is correct that, generally, identification of a suspect by photograph should not be used when the suspect is in custody. *People v Kurylczyk*, 443 Mich 289, 298; 505 NW2d 528 (1993). However, for a corporeal lineup to be the preferred identification procedure, the suspect must be in custody for the offense in which the lineup is held. See *People v Wyngaard*, 151 Mich App 107, 113; 390 NW2d 694 (1986); *People v Metcalf*, 65 Mich App 37, 46-47; 236 NW2d 573 (1975). Unless the suspect is in police custody for the particular offense under investigation, a photographic lineup conducted as part of an ongoing police investigation of an unsolved crime is merely a precustodial, investigatory photographic lineup with respect to the offense at issue. See *Kurylczyk*, 443 Mich at 302. And, here, because defendant was not in custody for the armed robberies being investigated at the time the photographic lineup was conducted, he was not entitled to a corporeal lineup. Accordingly, his claim on appeal in this regard is without merit.

Second, defendant claims that he was entitled to have counsel present at the time of the photographic lineup. However, again, defendant was not in custody for the armed robberies being investigated at the time the photographic lineup was conducted as part of the police investigation of the unsolved crimes. While defendant may have been a suspect, he had not been arrested for the armed robberies and had not, at that point, been positively identified by any of the eyewitnesses to the armed robberies. Adversarial judicial criminal proceedings had not been initiated. See *People v Hickman*, 470 Mich 602, 611; 684 NW2d 267 (2004). As our Supreme Court held in *Kurylczyk*, "[u]nder the circumstances, the appointment of counsel is neither necessary nor feasible." *Kurylczyk*, 443 Mich at 301-302. Simply stated, defendant was not in custody, accused of committing the offenses being investigated, at the time of the photographic lineup and "the right of counsel attaches with custody." *Id*. at 302. Accordingly, defendant's argument on appeal in this regard is without merit.

Third, defendant argues that the photographic array shown to the witnesses was unduly suggestive and violated his right to due process under the Fourteenth Amendment. A defendant's right to due process is violated when the photographic identification procedure "was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of

---

[1] *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

misidentification." *Id*. Defendant primarily argues that his photograph caused him to be singled out because it was "stretched from a different sized photograph than all of the others and had a large border around the picture that framed his face." However, our Supreme Court rejected a similar argument in *Kurylczyk*. In that case, the defendant argued that his photograph in a photographic array was taken from a closer distance than that of the others in the array, leading his photograph to appear larger than the others. *Id*. at 303. The Court held:

> [D]ifferences in the composition of photographs, in the physical characteristics of the individuals photographed, or in the clothing worn by a defendant and the others pictured in a photographic lineup have been found not to render a lineup impermissibly suggestive. [*Id*. at 304-305 (footnotes omitted).]

Defendant also claims that the photograph used in the array did not reflect him accurately; his mother and sister both testified that the photograph was an older picture of defendant. Defendant further argues that the photograph used in the array was not consistent with the description of the suspect provided by the eyewitnesses. But these challenges to the photograph used in the array do not give rise to a conclusion that defendant's photograph was "suggestive." The photograph used was "fairly representative of the defendant's physical features and thus sufficient to reasonably test the identification." *Id*. at 304 (citation omitted).

However, even if defendant's photograph was suggestive as he claims, he has not shown it "was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *Id*. at 302. When examining the totality of the circumstances, a variety of factors are considered to determine the likelihood of misidentification. *Id*. at 306. Those factors include: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id*. (citation omitted).

In this case, there is nothing in the record to suggest a substantial likelihood of misidentification. The lower court record reveals that the two eyewitnesses who identified defendant, and whose evidence defendant sought to exclude at the *Wade* hearing, were clear and certain in their identifications of defendant as the armed robber. And these two witnesses had ample time to see defendant when he stood in front of their vehicle, fired a bullet at their windshield, ordered two of the people out of the vehicle, and then took their possessions at gunpoint. In fact, one of the eyewitnesses testified that he looked directly at the armed assailant so that he could identify him later. And the other eyewitness testified that defendant pointed his gun directly at him. Further, the armed robbery occurred on March 16, 2014 and the photographic lineup occurred shortly after, on March 27, 2014. Under these circumstances, defendant's contention that there was a substantial likelihood of misidentification is without merit.

Next, defendant argues that his trial counsel was ineffective for (1) failing to call an expert to testify about the frailties of eyewitness identification testimony, and (2) presenting inconsistent alibi testimony. We disagree. Because defendant did not move for a new trial or request an evidentiary hearing in the trial court, this issue is not preserved and our review is

limited to errors apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

To establish ineffective assistance of counsel, a defendant must show that defense counsel's performance fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (citation omitted). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Further, this Court will not substitute our judgment for that of counsel regarding matters of trial strategy, nor will we assess counsel's competence with the benefit of hindsight. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (citation omitted).

Defendant first argues that, because "the key evidence in this case was the identification testimony," it was incumbent on his attorney "to move for the appointment of an expert in eyewitness identification." Defendant refers to several studies in his brief which challenge the utility of eyewitness identification testimony as allegedly unreliable, but he provides no argument as to why the facts in his case required such expert testimony to present a substantial defense. "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *Id*. And, again, counsel is presumed to employ effective trial strategy unless defendant overcomes the heavy burden and proves otherwise. *Id*. Generally, an attorney's failure to call a particular witness constitutes ineffective assistance only when the defendant has been deprived of a substantial defense. *Id*. (citation omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (citation omitted). Defendant has simply not demonstrated that he was deprived of a substantial defense because his attorney did not seek the appointment of an expert in eyewitness identification.

Further, the record reveals that defense counsel extensively and effectively cross-examined the three eyewitnesses, challenging their opportunity and ability to positively identify defendant as the armed assailant. For example, defense counsel questioned one of the eyewitnesses extensively about: inconsistencies between his trial testimony and his prior statement to the police; whether he saw one of the assailants limping after the armed robbery; the length of time that he was able to observe the armed assailant during the armed robbery and his ability to "get a good look" at the assailants; and whether anyone in the group of friends had consumed alcohol the evening of the armed robbery. Trial counsel also thoroughly cross-examined the second eyewitness, questioning him about the group's use of alcohol that evening, the length of time of the armed robbery, the distance between him and the armed assailant, and his subsequent description to police as to the ages of the assailants. Similarly, defense counsel vigorously cross-examined the off-duty school officer about his identification of defendant at the photographic lineup; the distance between him and the armed assailant during the armed robbery; the amount of time he had to observe the assailants during the armed robbery; and the inconsistencies between his trial testimony and preliminary examination testimony. In closing argument, trial counsel spent a great amount of time challenging the witnesses' description of the assailants, their opportunity to view the assailants, and the age of the photograph used in the photographic array. It is clear that defense counsel's strategy was to challenge the reliability of the identification of defendant as the armed assailant by the eyewitnesses. This Court does not

substitute its judgment for that of defense counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *Payne*, 285 Mich App at 190. While defense counsel could have presented expert testimony explaining the unreliability of eyewitness identification to buttress the misidentification defense, the failure to do so did not render counsel's performance below an objective standard of reasonableness. See *People v Cooper*, 236 Mich App 643, 658; 601 NW2d 409 (1999).

Defendant also argues that defense counsel's performance was deficient because inconsistent testimony from alibi witnesses was presented which undermined his explanation for how he was shot. However, decisions concerning whether to call certain witnesses are presumed to be matters of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). And, here, while the alibi witness testimony did conflict somewhat with regard to the time in which each witness was with defendant, as defense counsel noted, the witness testimony was consistent that defendant was on Carrie Street—not at the gas station—around the time of the armed robbery, and defendant was shot while at Club Treasure, not at the gas station. Therefore, defendant has failed to overcome the strong presumption that his attorney's decision to present the challenged alibi testimony was sound trial strategy even if it was not successful. See *Payne*, 285 Mich App at 190. But even if presenting the testimony of one or more of the alibi witnesses was in error, considering the strength of the other evidence, defendant has failed to demonstrate a reasonable probability exists that the result of the proceeding would have been different but for the error. See *Vaughn*, 491 Mich at 669.

Finally, in his supplemental brief, defendant argues that he is entitled to a remand under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), because the sentencing court engaged in impermissible judicial fact-finding in scoring offense variables (OVs) 1, 2, and 9. We agree that remand is required.

Defendant did not raise this challenge in the trial court therefore our review is for plain error affecting substantial rights. See *id*. at 392. As explained by our Supreme Court in *Lockridge*:

> To make a threshold showing of plain error that could require resentencing, a defendant must demonstrate that his or her OV level was calculated using facts beyond those found by the jury or admitted by the defendant and that a corresponding reduction in the defendant's OV score to account for the error would change the applicable guidelines minimum sentence range. If a defendant makes that threshold showing and was not sentenced to an upward departure sentence, he or she is entitled to a remand for [sic] the trial court for that court to determine whether plain error occurred, i.e., whether the court would have imposed the same sentence absent the unconstitutional constraint on its discretion. If the trial court determines that it would not have imposed the same sentence but for the constraint, it must resentence the defendant. [*Id*. at 399.]

First, defendant argues the scoring of 25 points for OV 1, aggravated use of a weapon, was impermissibly based on facts not found by the jury or admitted by him. We agree. MCL 777.31(1)(a) provides that OV 1 should be scored at 25 points when a firearm was discharged at

or toward a human being. Defendant was convicted of armed robbery, felony-firearm, and felon in possession of a firearm. None of these offenses required the jury to find that defendant discharged a firearm at or toward any of the victims. And defendant did not admit to discharging a firearm at or toward any of the victims. Thus, defendant's total OV score should be reduced by 25 points.

Second, defendant argues that the scoring of five points for OV 2, lethal potential of the weapon possessed, was impermissibly based on facts not found by the jury or admitted by him. We disagree. MCL 777.32(1)(d) provides that OV 2 should be scored at 5 points if the offender possessed or used a pistol, rifle, or shotgun. Defendant was convicted of armed robbery, felony-firearm, and felon in possession of a firearm; thus, the jury necessarily found that defendant possessed a firearm and the scoring of 5 points was proper.

Third, defendant argues that the scoring of ten points for OV 9, number of victims, was impermissibly based on facts not found by the jury or admitted by him. We disagree. MCL 777.39(1)(c) provides that OV 9 should be scored at 10 points if two to nine victims were placed in danger. Defendant was convicted of five counts of armed robbery; thus, the jury verdict necessarily established the factual basis to assess ten points for OV 9.

Defendant's total OV score was 65 points, which corresponds with level IV. Defendant's prior record variable (PRV) score was 82 points, which corresponds with level F. Because of the third-habitual enhancement, the applicable guidelines minimum sentencing range was 171-427 months. MCL 777.62. But the sentencing court engaged in judicial fact-finding with regard to OV 1, thus, defendant's OV score should be reduced by 25 points. The resulting OV score is 40 points, which corresponds with level III and changes the applicable guidelines minimum sentence range from 171-427 months to 135-337 months. See MCL 777.62; *Lockridge*, 498 Mich at 399. Accordingly, defendant is entitled to a "*Crosby* remand."[2] That is, this matter must be remanded to the sentencing court for determination whether the court would have imposed a materially different sentence under the sentencing procedure described in *Lockridge*. *Id*. at 397. If the sentencing court determines that it would have imposed the same sentence, the court may reaffirm the original sentence. *Id*. However, if the sentencing court determines that it would not have imposed the same sentence, it shall resentence defendant. *Id*.

Affirmed, but remanded for further sentencing proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly

---

[2] The *Lockridge* Court referred to such remands as "*Crosby* remands" after the procedures set forth in *United States v Crosby*, 397 F3d 103 (CA 2, 2005). *Lockridge*, 498 Mich at 395-397.