*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 15, 2025
1:48 PM

Plaintiff-Appellee,

v

No. 365224
Kent Circuit Court
LC No. 21-011004-FH

PRESTON PHILMORE CARTER,

Defendant-Appellant.

Before: N. P. HOOD, P.J., and O'BRIEN and REDFORD, JJ.

N. P. HOOD, P.J. (*dissenting*).

I respectfully dissent. At its core, this case poses a straightforward question: how long can law enforcement seize a motorist once his brief investigation dispels his initial reason suspicion of a traffic violation? A Grand Rapids Police Department officer stopped defendant, Preston Philmore Carter, because the officer could not see a license plate. After Carter pulled over, but before the officer spoke to him, the officer saw Carter's temporary license plate. At that point, the lawful basis for the stop no longer existed. The officer, however, continued and extended the seizure. He asked for Carter's license and registration. When Carter indicated that he did not have a valid license, the officer exercised his discretion to arrest him. During a search incident to that arrest, the officer located a use-amount of cocaine. Carter was convicted following a bench trial of one count of possession of less than 25 grams of a controlled substance, MCL 333.7403(2)(a)(*v*), second or subsequent offense, MCL 333.7431(2). The trial court sentenced Carter as a fourth-offense habitual offender, MCL 769.12, to nine months in jail. He now appeals his conviction and sentence, arguing among other things that the seizure and search were invalid. Due to the Fourth Amendment violation, I would vacate the conviction and remand.

## I. BACKGROUND

The majority accurately describes the background of this case. Several facts, however, warrant amplification. This case arises out of a search conducted incident to Carter's arrest following a traffic stop in Grand Rapids, Michigan, in the early morning hours of November 4, 2021. Grand Rapids Police Officer Joshua Rodenbeck testified that, while parked behind a restaurant near Michigan Street, he heard a loud motor on a sport utility vehicle (SUV) as it passed

his marked patrol car. Officer Rodenbeck then noticed that the SUV did not have a permanent license plate. He therefore initiated a traffic stop. As he approached the vehicle, he saw that the vehicle had a temporary license plate displayed in the rear window. Despite seeing the temporary license plate, Officer Rodenbeck continued the traffic stop. When Officer Rodenbeck asked for Carter's driver's license and registration, Carter disclosed that he did not have his driver's license. Officer Rodenbeck arrested Carter for driving without a license. When searching Carter incident to the arrest, he found a baggie containing a substance that law enforcement later identified as 0.69 grams of cocaine.

The prosecution charged Carter with possession of less than 25 grams of a controlled substance, MCL 333.7403(2)(a)(v). Following a preliminary examination, at which Officer Rodenbeck testified, the district court bound over the charge to circuit court.

Carter moved to suppress the cocaine as evidence seized pursuant to an illegal arrest. He argued that, at the preliminary examination, Officer Rodenbeck testified that he initiated the traffic stop because he did not see a license plate on Carter's vehicle. But as he walked toward the vehicle—before interacting with Carter—he saw the temporary license plate displayed in the vehicle window. Because the only reason Officer Rodenbeck stopped Carter was because he thought that the vehicle lacked a license plate, once he saw that he was mistaken, the stop should have ended. By continuing the stop without a valid basis and asking Carter for his driver's license and registration, he violated Carter's right to be free from unreasonable search and seizure.

The prosecution responded in opposition prior to the evidentiary hearing. It argued that Officer Rodenbeck could not see the temporary license plate until he was approaching the vehicle on foot and he could not run a check on the validity of the license plate until he returned to his squad car. Because Carter stated in the initial contact with Officer Rodenbeck that he did not have a driver's license with him, the traffic stop and search were reasonable and did not violate Carter's Fourth Amendment rights. The prosecution further argued that the temporary license plate was not clearly visible. Officer Rodenbeck told Carter the reason for the stop and requested his driver's license and registration, which became another reason to continue the stop when Carter stated that he did not have his driver's license. The prosecution did not refence suspicion of a noise ordinance violation as a basis for the stop.

The trial court held an evidentiary hearing on the motion to suppress. At the hearing, Officer Rodenbeck testified as follows:

> So I was in my patrol cruiser sitting behind Checkers restaurant working on a report when we heard a loud vehicle pull behind us and enter onto Michigan Street heading west. It appeared that the vehicle did not have a license plate, so I pursued the vehicle, initiated a traffic stop at Michigan and Diamond. Upon exiting the vehicle and walking up towards the vehicle I realized that there was, in fact, a temp plate in the back window, just couldn't see it because of the nighttime and tinted windows.

Again, Officer Rodenbeck stated that he could not see the temporary license plate until he approached the vehicle on foot. He then approached the driver's side window, told Carter why he initiated the stop, and asked him for his driver's license. At the time Officer Rodenbeck spoke to

Carter, he could see the temporary license plate but did not know whether it was valid and had not checked. Carter told Officer Rodenbeck that he did not have his driver's license on him. Because operating a motor vehicle while not carrying a driver's license is a misdemeanor,[1] Officer Rodenbeck ordered Carter out of the vehicle and arrested him. He testified that he searched Carter and found a baggie in his pocket. According to Officer Rodenbeck, he could not verify the validity of the temporary license plate or the status of the vehicle without going to the front of the vehicle to get the vehicle identification number. Officer Rodenbeck testified that he had the discretion to order Carter out of the vehicle, and, because it was 1:30 a.m., he decided to have Carter exit the vehicle and sit in the squad car for safety reasons.

Because Carter was driving without a license, and Officer Rodenbeck did not know whether the temporary license plate was valid, he arrested Carter and performed a search incident to arrest. Officer Rodenbeck further stated that he also searched for weapons because Carter was going to be sitting in the back of the patrol car.

During direct examination, Officer Rodenbeck did not testify that a noise violation was the basis for the stop. In fact, the only reference to the loudness of the vehicle was his initial description of Carter's vehicle as a "loud vehicle" that pulled behind Officer Rodenbeck's vehicle before he noticed that it did not appear to have a license plate. The first time Officer Rodenbeck described the sound of the vehicle as part of the stop was during cross-examination.

On cross-examination, Officer Rodenbeck testified that he stopped Carter's vehicle because it did not appear to have a license plate and because it had a "loud muffler":

> [*Defense Counsel*]: And the reason you stopped the vehicle was because it appeared to have no license plate?
>
> [*Officer Rodenbeck*]: Yeah, that and the loud muffler was what also initiated the stop.
>
> [*Defense Counsel*]: Okay. After stopping the vehicle, were you able to see that the vehicle did, in fact, have a temporary plate?
>
> [*Officer Rodenbeck*]: Once I began walking up, I could see that there was a temp plate, yes.

Officer Rodenbeck stated that, once he saw the temporary license plate, he could not verify its validity by simply looking at it, although nothing looked to be invalid about the plate.

During cross-examination, Officer Rodenbeck confirmed that both his dashboard camera (dashcam) and his body camera (bodycam) recorded the incident. Defense counsel played the first minute and 30 seconds of the dashcam video and the first two minutes and 30 seconds of bodycam video for the trial court.

---

[1] See MCL 257.311.

-3-

The dashcam video shows a Trailblazer SUV passing the patrol car, which was parked in a dark area. No license plate is visible on the SUV at that time. The patrol car followed the SUV as it signaled to make a right turn onto what was later identified as Michigan Street. Although someone in the patrol car turned on its headlights, which illuminated the back of the SUV before it turned right, no license plate is visible on the back or in the rear window of the SUV. At about the 30-second mark, the audio turned on, and someone in the patrol car activated the overhead lights of the patrol car. The SUV pulled to the side of the road, and, as the patrol car pulled behind the SUV and came to a stop, no license plate was visible on the SUV. However, at the one-minute mark, someone turned on a spotlight on the patrol car and, at that time, what appears to be a rectangular temporary license plate is visible in the lower left corner of the rear window of the SUV. Officer Rodenbeck then exited the vehicle within eight seconds of when the spotlight illuminated the back of the SUV.

Officer Rodenbeck's bodycam video shows him drive his patrol car past a Checker's Restaurant sign. Just before the 30-second mark, red and blue lights are visible through the windshield of the patrol car and the audio turned on. The bodycam video does not show any part of the SUV until Officer Rodenbeck exited the vehicle. By the 1:07 mark, a spotlight on the patrol car was focused on the back of the SUV, and what appears to be a rectangular temporary plate is visible; the numbers on the temporary plate are not visible in the video until approximately the 1:11 mark, when Officer Rodenbeck was walking toward the driver's side door of the SUV, but before he reached the driver's side door.

Officer Rodenbeck walked toward the driver's side door and instructed Carter to roll down his window. He told Carter that he stopped him because he did not have a license plate. Carter responded that the plate was inside the window, and Officer Rodenbeck said, "Oh okay. I just couldn't see it." He then told Carter that he would take a look at it and asked for Carter's driver's license. Carter responded, "No, I don't." Officer Rodenbeck then asked Carter to turn off the engine and step out of the SUV. Officer Rodenbeck then placed Carter in handcuffs.

During the portions of the videos when Carter's engine was on, the sound of the engine or muffler is not noticeable. During the interaction between Officer Rodenbeck and Carter, there was no discussion regarding the sound of the engine or muffler. On redirect examination, Officer Rodenbeck testified that the audio was not on or did not pick up how loud the SUV was when he first noticed it. During the hearing, neither party questioned Officer Rodenbeck regarding noise ordinances or other statutes that would provide a legal basis for stopping Carter for having a loud engine or muffler.

After arguments from both sides, the trial court denied the motion to suppress. The trial court observed that the evidence showed that Officer Rodenbeck heard a loud vehicle, he could not see a license plate on the vehicle, he pulled over the vehicle, and Carter stated that he did not have his driver's license. The trial court ruled that Officer Rodenbeck did not need to abandon the stop once he saw the temporary license plate because he also noted that the vehicle was loud without stating that the noise level was a valid basis for stopping the vehicle. The trial court concluded that Officer Rodenbeck had no obligation to end the stop once he saw the temporary license plate "because he also had to deal with the fact that the car was loud." The trial court further ruled that Officer Rodenbeck did not violate any rule or statute by stopping Carter or

searching him after his arrest for failing to produce his driver's license. For those reasons, the trial court denied Carter's motion to suppress the cocaine.

Carter was convicted following a bench trial. In February 2023, the trial court sentenced Carter to nine months in jail, with credit for 83 days served. The trial court also ordered Carter to pay $68 for the state minimum cost, $130 for crime victim's rights, and $1,000 in court costs. This appeal followed.

## II. STANDARDS OF REVIEW

The majority correctly states the standards of review. This Court reviews a trial court's findings of fact at a suppression hearing for clear error. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). Clear error occurs when the reviewing court is definitely and firmly convinced that the trial court made a mistake. *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018). "This Court reviews de novo questions of constitutional law and a trial court's decision on a motion to suppress evidence." *People v Brcic*, 342 Mich App 271, 277; 994 NW2d 812 (2022).

## III. FOURTH AMENDMENT VIOLATION

Carter argues that the trial court should have granted his motion to suppress the cocaine because it was seized in violation of his Fourth Amendment rights. I agree.

Both the Fourth Amendment of the United States Constitution and Article 1, § 11 of the Michigan Constitution protect against unreasonable searches and seizures, and they are coextensive. *People v Slaughter*, 489 Mich 302, 311; 803 NW2d 171 (2011). See also US Const, Am IV; Const 1963, art 1, § 11. "Under the Fourth Amendment, stopping a vehicle and detaining the occupants amounts to a seizure." *People v Simmons*, 316 Mich App 322, 326; 894 NW2d 86 (2016).[2] A traffic stop is permissible if a police officer has an articulable and reasonable suspicion that the vehicle or its occupants have violated a traffic law. *Id*. "[T]he reasonableness of a search or seizure depends on 'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.' " *Williams*, 472 Mich at 314, quoting *Terry v Ohio*, 392 US 1, 20; 88 S Ct 1868; 20 L Ed 2d 889 (1968). "For a traffic stop to be reasonably related in scope to the circumstances justifying the stop, the driver should be 'detained only for the purpose of allowing an officer to ask reasonable questions concerning the violation of law and its context for a reasonable period.' " *Simmons*, 316 Mich App at 326, quoting *Williams*, 472 Mich at 315. Further, "[t]he determination whether a traffic stop is reasonable must necessarily take into account the evolving circumstances with which

---

[2] "Generally, seizures are reasonable for purposes of the Fourth Amendment only if based on probable cause." *People v Lewis*, 251 Mich App 58, 69; 649 NW2d 792 (2002). *Terry v Ohio*, 392 US 1, 30-31; 88 S Ct 1868; 20 L Ed 2d 889 (1968), carved out an exception to the probable cause requirement that permits the police to stop and briefly detain a person for investigation based on reasonable and articulable suspicion that criminal activity may be afoot. The Michigan Supreme Court has extended that exception to traffic stops. *People v Nelson*, 443 Mich 626, 631-632; 505 NW2d 266 (1993).

the officer is faced." *Simmons*, 316 Mich App at 326 (quotation marks and citation omitted). The dispositive inquiry is not whether an actual violation occurred, but whether the officer had a reasonable suspicion that a violation may have occurred. *People v Fisher*, 463 Mich 881, 881-882; 617 NW2d 37 (2000) (CORRIGAN, J., concurring).

"Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause[.]" *Navarette v California*, 572 US 393, 397; 134 S Ct 1683; 188 L Ed 2d 680 (2014) (quotation marks and citations omitted). And these stops should last only long enough "to quickly confirm or dispel" the officer's initial suspicion. *People v Barbarich*, 291 Mich App 468, 473; 807 NW2d 56 (2011). See also *United States v Sharpe*, 470 US 675, 686; 105 S Ct 1568; 84 L Ed 2d 605 (1985) ("In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.").

Here, the circumstances evolved, and Officer Rodenbeck's initial suspicion was quickly dispelled. The initial stop was valid. Officer Rodenbeck stopped Carter because he suspected that he was driving without displaying a license plate. See MCL 257.225(2).[3] It is undisputed that Carter's vehicle did not have a permanent license plate affixed. So, when Officer Rodenbeck noticed the vehicle, he had reasonable and articulable suspicion that a violation of MCL 257.225(2) was occurring and could lawfully stop the vehicle. See *People v Thornton*, unpublished per curiam opinion of the Court of Appeals, issued October 8, 2019 (Docket No. 347561); slip op at 6 (dealing with a nearly identical fact pattern; holding that the initial stop was valid where the officer could not see a permanent license plate).[4] But it is also undisputed that Officer Rodenbeck's suspicions were quickly dispelled. See *Barbarich*, 291 Mich App at 473. The circuit court and the parties agreed that shortly after stopping Carter, Officer Rodenbeck was able to see that there was a

---

[3] MCL 257.225(2) provides, in pertinent part:

> The plate shall be attached at a height of not less than 12 inches from the ground, measured from the bottom of the plate, in a place and position that is clearly visible. The plate shall be maintained free from foreign materials that obscure or partially obscure the registration information and in a clearly legible condition.

This Court in *Simmons* held that the display of temporary paper registrations has to meet the positional and legibility requirements for registration "plates" under MCL 257.225(2). *Thornton*, unpub op at 4 n 3, citing *Simmons*, 316 Mich App at 326-327. We are bound to follow *Simmons*. See MCR 7.215(C)(2). However, like the court in *Thornton*, I question whether temporary paper registrations are indeed "plates" under the Motor Vehicle Code, MCL 257.1 *et seq*. Instead, they appear to be "markers." See MCL 257.226a. See also *Thornton*, unpub op at 4 n 3.

[4] Though unpublished opinions are not binding under the rule of stare decisis, this Court may nonetheless consider such opinions for their instructive or persuasive value. See *People v Parkinson*, ___ Mich App ___, ___ n 3; ___ NW3d ___ (2023) (Docket No. 362683); slip op at 5 n 3.

temporary registration in Carter's rear window. Officer Rodenbeck did not testify that it was illegible or otherwise noncompliant with applicable statutes. See MCL 257.225(2). See also MCL 257.226a (applying to temporary "markers"). He only testified that he could see it and that he did not determine whether it was valid. Further, the video illustrates that the temporary plate was legible before Officer Rodenbeck spoke to Carter. Therefore, the legal question before us is whether the Constitution permitted Officer Rodenbeck "to extend the traffic stop at that point, in light of the requirement that the scope of any search or seizure must be limited to that which is necessary 'to quickly confirm or dispel the officer's suspicion.' " *Thornton*, unpub op at 4, quoting *Barbarich*, 291 Mich App at 473. I would conclude that it did not. See *Thornton*, unpub op at 4. See also *United States v Jones*, 479 F Appx 705 (CA 6, 2012) (reversing the denial of a motion to suppress; holding that the officer exceeded the scope of a valid traffic stop when he continued the detention despite having observed a temporary tag in the rear window as he approached the vehicle).

The critical facts of the stop at issue in this case are nearly identical with those in *Thornton*. See *Thornton*, unpub op at 11-2. There, this Court held that it was unconstitutional to extend a traffic stop for failure to display a license plate once the officer observed a temporary plate. *Id*. at 6-7. The officer in *Thornton* was conducting surveillance of an area known for drug trafficking activity. *Id*. at 1. He observed the defendant's vehicle leave a motel parking lot and did not see a license plate on the back of the vehicle when it passed him. *Id*. at 2. While following the vehicle, he saw an "unreadable temporary paper registration in the rear window." *Id*. He stopped the vehicle, and as he approached it, he saw the temporary registration in the back window and testified "from that vantage point he was able to see and read the writing on the registration." *Id*. Nonetheless, the officer asked for the driver's license, registration, and proof of insurance. *Id*. The driver did not have a valid license. *Id*. The officer asked for consent to search the vehicle, the driver consented, and the officer found controlled substances and drug paraphernalia inside. *Id*. The defendant moved to dismiss the charges in the district court, arguing that the search was illegal, and the district court agreed. *Id*. at 3. The prosecution appealed the district court's decision to the circuit court, which reversed, relying on *Simmons*, 316 Mich App 322. See *Thornton*, unpub op at 3.

This Court reversed the circuit court, concluding that the extension of the stop was unconstitutional. See *Thornton*, unpub op at 4-8. It explained that "continuing to detain [the] defendant after the officer had determined that there was no violation of the traffic laws by asking for his driver's license without telling him he was free to go constituted an impermissible extension of the stop beyond its legitimate scope." *Id*. at 5. Although the initial stop was valid, the purpose was to investigate the suspected traffic violation—driving without a license plate. See *id*. at 6 ("By pulling [the] defendant over when he could not see license plate, [the officer] properly followed a mode of investigation reasonably calculated to 'quickly confirm or dispel the officer's suspicion[.]' "), quoting *Barbarich*, 291 Mich App at 473. The issue before this Court was whether the officer could ask for the driver's license and registration (i.e., continue the seizure) after he saw an ostensibly valid and legible temporary plate. *Thornton*, unpub op at 6. The answer was no. *Id*. at 6-7. This Court concluded:

> As the seizure's permissible scope had been reached and thus the seizure was, as a matter of law, at an end once the officer determined that the car had a facially valid temporary registration, any further detention of [the] defendant

constituted a new seizure, and even a 30-second extension of the initial stop constituted a violation of [the] defendant's rights. [*Id*. at 7.]

This Court rejected the prosecution's argument that the officer was nevertheless permitted to investigate the defendant's driver's license and registration, finding it "functionally no different" than the practice found unconstitutional in *Delaware v Prouse*, 440 US 648; 99 S Ct 1391; 59 L Ed 2d 660 (1979). *Thornton*, unpub op at 7. "Thus, while the initial stop here was justified at its inception, continuing to detain [the] defendant after the officer had determined that there was no violation of the traffic laws by asking for his driver's license without telling him he was free to go constituted an impermissible extension of the stop beyond its legitimate scope." *Id*. The evidence was therefore inadmissible. *Id*., citing *Wong Sun v United States*, 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963).

For the same reasons, once Officer Rodenbeck saw the temporary license plate displayed, the seizure should have ended. Continuing to detain Carter, even to ask for his driver's license and registration, without informing him that he was free to go amounted to a new seizure. See *id*. at 7. This new seizure was not underpinned by reasonable suspicion of a traffic violation. Put simply, after Officer Rodenbeck saw the temporary license plate, there was no longer a valid basis for the stop. Extending it further, even by 30 seconds, was a violation of Carter's rights. And the fruits of that violation should be suppressed.

Further, as in *Thornton*, I would conclude that *Simmons*, 316 Mich App 322, another factually similar case, is distinguishable based on one critical factual difference: here, there was no testimony about the legibility of the temporary license plate. Compare *Thornton*, unpub op at 5, with *Simmons*, 316 Mich App at 324-325. Like *Thornton* and this case, in *Simmons*, the officer stopped the defendant's vehicle because it did not have a metal license plate attached to the back. See *id*. at 324. And like these cases, the officer noticed a temporary license plate in the back window of the vehicle. *Id*. But unlike these cases, the officer could not read it. *Id*. He testified unequivocally that the license plate was illegible even from three or four feet away. *Id*. This Court concluded that the officer continued to have a reasonable and articulable suspicion of a violation of MCL 257.225(2) because the temporary license plate was not in a clearly visible position or in a clearly legible condition. *Id*. at 326. Therefore, there was still a basis for the stop even after the officer saw the temporary license plate. See *id*. Here, there was no such testimony. Officer Rodenbeck testified that he saw the temporary license plate. He did not opine on its validity because he did not check it. But there was no testimony that it was illegibly or improperly displayed. On the contrary, he stated unequivocally that he could see the temporary license plate. Without that testimony or evidence that the license plate violated MCL 257.225(2), this case is much closer to *Thornton* than *Simmons*.

Finally, to the extent that the trial court relied on "loudness" as a basis for validating the unconstitutional stop, I would conclude that that was clear error. As previously described, on cross-examination, Officer Rodenbeck stated that the vehicle's muffler was also a basis for the stop. He and the defense had the following exchange:

> [*Defense counsel*]: And the reason you stopped the vehicle was because it appeared to have no license plate?

> [*Officer Rodenbeck*]: Yeah, that and the loud muffler was what also initiated the stop.

This was the first and one of the only references to "loudness" being a basis for the stop. In fact, Officer Rodenbeck did not articulate that he was investigating a violation of the Grand Rapids noise ordinance, Grand Rapids Code, § 10.76, at all. Reference to that ordinance did not appear in the police report, preliminary examination testimony, direct examination at the suppression hearing, or in the prosecution's written response to the motion to suppress. It nonetheless appears to have been an alternative basis on which the trial court denied the motion to suppress. This was clear error.

I accept, as I must, the trial court's credibility determinations. Therefore, my starting point is that Officer Rodenbeck credibly believed that the "loud muffler" was part of the basis for the stop. The problem is not his credibility. The problem is the lack of other evidence. Other cases dealing with noise violations as the basis for the stop have required significantly more factual development than what we have here. See, e.g., *People v Burrell*, 417 Mich 439, 448-450; 339 NW2d 403 (1983). See also *People v Mengel*, unpublished per curiam opinion of the Court of Appeals, issued June 24, 2021 (Docket No. 354983); slip op at 4-5. Nowhere in the hearing testimony, the prosecution's brief, the body cam footage, or dash cam footage, did anyone reference the noise ordinance and potential violation of it. Unlike the evidence of the lack of a license plate and presence of the temporary license plate, of which the trial court received substantial evidence and briefing, there was scant information about the noise of the vehicle until redirect examination and recross-examination. And there was no reference at all to Officer Rodenbeck's suspicions—reasonable or otherwise—of an ordinance violation. The prosecution presented little evidence regarding the vehicle's noise because it does not appear to have been the theory of the prosecution's case until this appeal. Regardless of the reasons, there was insufficient evidence on which the trial court could rely to conclude that there was reasonable and articulable suspicion of a noise ordinance violation.

For these reasons, I would reverse the trial court's decision on the motion to suppress. I would vacate Carter's conviction and remand for further proceedings. I respectfully dissent.

/s/ Noah P. Hood