*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

FELICIA ANN BISHOP,

Defendant-Appellant.

UNPUBLISHED
December 09, 2025
10:40 AM

No. 371577
Kent Circuit Court
LC No. 22-011034-FH

Before: M. J. KELLY, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

Defendant, Felicia Bishop, appeals as of right her jury trial conviction of carrying a pistol in a vehicle without a license (CCW), MCL 750.227. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

On October 19, 2022, Grand Rapids Police Officers Shaun Dewent and Amanda Stewart were patrolling in the city of Grand Rapids. While traveling eastbound on Martin Luther King, Jr., (MLK, Jr.) Street, the officers observed Bishop's vehicle suddenly turn left in front of them onto MLK, Jr., Street from the intersection at Kalamazoo Avenue. Officer Stewart testified that Bishop's vehicle made the turn without stopping for a stop sign and that she had to slam on her vehicle's brakes to avoid hitting Bishop's vehicle as it crossed her lane of traffic. Officer Steward made a U-turn and initiated a traffic stop.

Officer Stewart asked defendant for her driver's license, registration, and proof of insurance. In response, Bishop held up her driver's license to her driver's side window, but refused to physically hand it to Officer Stewart or to roll down the window. Grand Rapids Police Road Patrol Sergeant Tom Warwick arrived on the scene and asked Bishop for her license again. This time Bishop complied. Sergeant Warwick then repeated the request for Bishop to produce her registration and proof of insurance. Bishop advised that the documents were in the glove box. Shen then turned her body, opened the glove box, removed a stack of papers, and placed them near the center console. When she did so, two officers observed a firearm in the stack of paperwork

-1-

and a firearm magazine in the glove box. In response, the officers secured Bishop and her passenger in their patrol cars. They then seized the handgun and magazine.

Before trial, Bishop moved to suppress evidence of all items seized from her car, arguing that the officers had no reasonable suspicion or probable cause to conduct the traffic stop because she had come to a complete stop at the stop sign. At the evidentiary hearing on the matter, Bishop relied upon the dashcam video from the patrol car. She argued that the video contradicted Officer Stewart's testimony that she saw Bishop disobey the stop sign and her claim that she had to brake to avoid hitting Bishop's car. The trial court disagreed, finding that the video showed that Bishop disobeyed the stop sign and failed to yield to oncoming traffic. Accordingly, the court denied the motion to suppress.

Thereafter, following a jury trial, Bishop was convicted of CCW. This appeal follows.

## II. MOTION TO SUPPRESS

## A. STANDARD OF REVIEW

Bishop argues that the trial court erred by denying her motion to suppress. "This Court reviews for clear error a trial court's findings of fact made after a suppression hearing, but reviews de novo the ultimate decision on a motion to suppress." *People v Rodriguez*, 327 Mich App 573, 583; 935 NW2d 51 (2019). "We examine the facts as they were presented to the trial court at the time of the suppression hearing, not as supplemented by evidence presented at trial." *People v Hammerlund*, 504 Mich 442, 450; 939 NW2d 129 (2019). Further, when we have access to the same video that was presented to the trial court, we "need not rely on the trial court's conclusions as to what the video contains." *People v Kavanaugh*, 320 Mich App 293, 298; 907 NW2d 845 (2017). We review de novo the trial court's application of Fourth Amendment principles. *Hammerlund*, 504 Mich at 451.

## B. ANALYSIS

The Fourth Amendment of the United States Constitution protects defendants from unreasonable searches and seizures. US Const, Am IV. When police conduct violates a defendant's Fourth Amendment rights, a trial court may exclude evidence obtained through the constitutional violation to deter future constitutional violations. *United States v Leon*, 468 US 897, 906; 104 S Ct 3405; 82 L Ed 2d 677 (1984). A traffic stop constitutes a seizure under the Fourth Amendment, but such a seizure is not unreasonable if it was justified by reasonable suspicion. See *Kansas v Glover*, 589 US 376, 380; 140 S Ct 1183; 206 L Ed 2d 412 (2020). Reasonable suspicion exists when there is "a particularized and objective basis for suspecting the particular person of criminal activity." *Id*. (quotation marks and citation omitted). Reasonable suspicion requires more than a hunch but less than is required for probable cause. *Id*. Courts must consider the officer's perspective, allowing for "commonsense judgments and inferences about human behavior." *Id*. at 380-381 (quotation marks and citation omitted).

When a police officer initiates a lawful traffic stop on the basis of reasonable suspicion, the officer may request identification and other paperwork, and the officer may ask questions about the underlying offense. *People v Williams*, 472 Mich 308, 316; 696 NW2d 636 (2005). The officer may also expand the length of the stop and scope of the investigation as necessary to respond to

evolving circumstances. *Id*. This includes the ability "to seize, without a warrant, items in plain view if the officers are lawfully in a position from which they view the item, and if the item's incriminating character is immediately apparent." *People v Champion*, 452 Mich 92, 101; 549 NW2d 849 (1996). The plain-view exception applies to the seizure of firearms in vehicles, even if the defendant produces the required license. See *People v Williams*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365299); slip op at 7, 10.

In this case, the officers stated that they stopped Bishop's vehicle because they saw her disobey a stop sign and make a left turn when it was not safe to do so. Both actions are impermissible under MCL 257.649(8). Thus, the question on appeal, is whether the trial court erred by crediting the officers' testimony and by finding that the dashcam supported their testimony.

The dashcam video showed that there was a stop sign posted on the utility pole by a crosswalk at the intersection of Kalamazoo Avenue and MLK, Jr., Street. The trial court found that the video depicted Bishop failing to stop for the stop sign. As noted earlier, that finding is afforded no deference because we are in the same position as the trial court to view the video. See *Kavanaugh*, 320 Mich App at 298. Based upon our review, we conclude that the video does not conclusively establish whether Bishop's vehicle came to a complete stop before the crosswalk because the view of Kalamazoo Avenue is blocked by parked cars, trees, and other signage.

The officers, however, testified that Bishop ran the stop sign and that she entered the intersection when it was not safe to do so. The court found their testimony credible. On appeal, Bishop suggests that the court erred by doing so because their testimony was conclusively refuted by the dashcam footage. We disagree. As an initial matter, it is axiomatic that the dashcam did not represent the officers' actual line of sight because the camera was not positioned in the car at the same level and distance as the officers' eyes. Thus, the video plainly did not capture the officers' exact points of view. Moreover, it corroborated their testimony in two important ways. First, the video clearly shows that Officer Stewart had to brake abruptly when Bishop's vehicle entered the intersection. That corroborates the officers' testimony that they had to brake and that Bishop entered the intersection in an unsafe manner. Second, the video depicts Bishop's vehicle travelling at a constant rate of speed. It does not show her accelerating into the intersection. As such, it supports the officers' testimony that Bishop "rolled" through the stop sign instead of coming to a complete stop and then accelerating out of that stop.

On this record, the trial court did not clearly err by finding that the officers observed Bishop ignore a stop sign and fail to yield to oncoming traffic. Accordingly, the traffic stop was at least justified by reasonable suspicion that defendant committed a civil infraction.

Because the traffic stop was justified by reasonable suspicion, the officers' request for Bishop's license, registration, and proof of insurance was appropriate. When Bishop removed the stack of paperwork from her glove box, the officers saw a firearm in the stack of papers and a magazine in the glove box. At the time, the officers were lawfully in a position to view these items because the traffic stop was legal. The incriminating character of this evidence was immediately apparent because it is illegal to carry a firearm in a vehicle without a license. See *Williams*, ___ Mich App at ___; slip op at 7, 10. Therefore, the warrantless seizure of the magazine and firearm

-3-

did not violate Bishop's Fourth Amendment rights, and the trial court did not err when it denied her motion to suppress.

Affirmed.

/s/ Michael J. Kelly
/s/ James Robert Redford
/s/ Kathleen A. Feeney